Slip Op. 18-108

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **RUSS BERRIE & COMPANY, INC.,**<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>**UNITED STATES,**<br><br>　　　　　　　　Defendant. | **Before: Timothy C. Stanceu, Chief Judge**<br><br>**Court No. 93-00391** |

## OPINION AND ORDER

[Determining, upon cross motions for summary judgment, the tariff classifications of various articles]

Dated: August 30, 2018

*Daniel J. Gluck*, Simon Gluck & Kane LLP, of New York, NY, for plaintiff Russ Berrie & Company, Inc. With him on the brief were *Christopher M. Kane* and *Mariana del Rio Kostenwein*.

*Beverly A. Farrell*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY, for defendant United States. With her on the brief were *Joyce R. Branda*, Acting Assistant Attorney General, and *Amy M. Rubin*, Assistant Director. Of counsel on the brief was *Sheryl A. French*, Office of the Assistant Chief Counsel, U.S. Customs and Border Protection.

Stanceu, Chief Judge: Plaintiff Russ Berrie & Company, Inc. ("Russ Berrie & Co.")

brought this action to challenge the tariff classifications by the United States Customs Service,

predecessor of U.S. Customs and Border Protection ("Customs"), of various articles it imported

in 1992.

Before the court are cross-motions for summary judgment. Concluding that there are no

genuine issues of material fact, the court grants in part, and denies in part, each motion.

## I. Background

This action, which was commenced in 1993, has a long history and includes claims regarding the tariff classification of a large number of articles. *See* Summons (July 14, 1993), ECF No. 1; Compl. (Mar. 17, 2010), ECF No. 28. Over the course of the litigation, the parties have agreed to the disposition of plaintiff's claims as to certain articles. At the court's request, the parties consulted with the objective of identifying the articles for which classification remains in dispute. Plaintiff filed a submission on June 26, 2014 identifying those articles. *See* Letter from Simon Gluck & Kane LLP to Ct. at Sched. 1 (June 26, 2014), ECF No. 111-1. Plaintiff also identified articles as to which the parties have agreed to a settlement, *id*. at Sched. 3, ECF No. 111-3, and articles for which plaintiff states it will abandon its claims, *id*. at Sched. 2, ECF No. 111-2. Plaintiff was granted leave to file an amended complaint on August 21, 2014. *See* First Am. Compl. (Aug. 21, 2014), ECF No. 117 ("Am. Compl."). The parties thereafter filed their respective motions for summary judgment.

### A. The Merchandise Remaining in Dispute

Upon review of the parties' submissions, the court determines that the tariff classification of nine categories of merchandise remains in dispute: (1) various styles of "Trolls," which are articles made to depict mythical creatures; (2) "Goonie Goblins" finger puppets; (3) figures identified as "Haunting Horrors" that feature holographic faces, in three designs; (4) an article identified as "Bobbling Bones"; (5) a group of articles organized as a "Trick 'n Treat Fun Center" consisting of five types of articles, identified as "multiplying viewers," "puzzle watches," "squirt balls," "paint palettes," and "stencil sets"; (6) articles identified as "Christmas Hugs"; (7) various porcelain and earthenware candleholders; (8) an "Etched Images Plaque"; and (9) four styles of "Baby Booties." *See* Letter from Simon Gluck & Kane LLP to Ct. at Sched. 1.

### B. Entries, Liquidations, and Protests

The articles remaining at issue were entered from July 6, 1992 through October 26, 1992 in a number of entries through the ports of New York/Newark and San Francisco. *See* Summons; Letter from Simon Gluck & Kane LLP to Ct. at Sched. 1 (entry information for articles remaining at issue).  Customs liquidated the entries between November 6, 1992 and February 19, 1993.  *See* Summons; Letter from Simon Gluck & Kane LLP to Ct. at Sched. 1.

The articles remaining in dispute were classified by Customs upon liquidation under a number of different headings of the Harmonized Tariff Schedule of the United States ("HTSUS") (1992).[1]  *See* Am. Compl. ¶ 12(a)-(ppp) (declaring the classification by Customs); Answer to First Am. Compl. ¶ 12 (Oct. 20, 2014), ECF No. 122-1 ("Def.'s Am. Answer") (admitting as to the classification by Customs).  The majority of these articles, including the various models of Trolls, were classified by Customs upon liquidation under heading 9503, HTSUS, which includes within its scope certain types of toys.  Customs classified the candleholders under heading 9405, HTSUS, which includes "[l]amps and lighting fittings . . . not elsewhere specified or included."  Customs classified the Baby Booties under heading 6405, HTSUS ("Other footwear").  Customs classified the Etched Images Plaques under heading 3926, HTSUS ("Other articles of plastics . . .") and the paint palettes under heading 3213, HTSUS ("Artists', students' or signboard painters' colors, modifying tints, amusement colors and the like, in tablets, tubes, jars, bottles, pans or in similar forms or packings").  Customs classified the squirt balls under heading 9505, HTSUS ("Festive . . . or other entertainment articles, including magic tricks and practical joke articles . . .").

---

[1] All citations to the Harmonized Tariff Schedule of the United States ("HTSUS") are to the 1992 edition, the version in effect when all of the articles in dispute were entered.

Between February 4, 1993 and April 1, 1993, Russ Berrie & Co. filed protests contesting

the classification determinations Customs made upon liquidation.  *See* Summons.  In its protests,

plaintiff claimed that the articles should be classified in certain subheadings under heading 9505,

HTSUS ("Festive, carnival or other entertainment articles, including magic tricks and practical

joke articles . . . ").  *See id.*; Am. Compl. ¶¶ 18-21.  Customs denied each of plaintiff's protests.

*See* Summons; Am. Compl. ¶ 3.

### C. Proceedings before the Court

Plaintiff filed its current motion for summary judgment and supporting brief in

September 2014.  *See* Pl.'s Mem. of Law in Supp. of Pl.'s Mot. for Summ. J. (Sept. 15, 2014),

ECF No. 118-3 ("Pl.'s Mot.").  On October 20, 2014, defendant cross-moved for summary

judgment, *see* Def.'s Mem. of Law in Opp'n to Pl.'s Mot. for Summ. J. and in Supp. of Def.'s

Cross-Mot. for Summ. J. (Oct. 20, 2014), ECF No. 122 ("Def.'s Mot."), and on the same day

filed its answer to plaintiff's amended complaint, Def.'s Am. Answer.  On November 24, 2014,

plaintiff filed a reply in support of its summary judgment motion and in opposition to

defendant's cross-motion.  Pl.'s Mem. of Law in Opp'n to Def.'s Cross-Mot. for Summ. J. and in

Further Supp. of Pl.'s Mot. for Summ. J. (Nov. 24, 2014), ECF No. 123 ("Pl.'s Reply").  On

January 28, 2015, defendant filed its reply in support of its cross-motion and in opposition to

plaintiff's motion for summary judgment.  Def.'s Mem. of Law in Opp'n to Pl.'s Mot. for Summ.

J. and Reply in Further Supp. of Def.'s Cross-Mot. for Summ. J. (Jan. 28, 2015), ECF. No. 131

("Def.'s Reply").

On January 29, 2015, plaintiff requested the court's leave to respond to what plaintiff

construed as a *de facto* motion, made in defendant's reply, to strike certain of plaintiff's

evidentiary submissions.  Letter from Simon Gluck & Kane LLP to Ct. (Jan. 29, 2015), ECF

No. 132.  Plaintiff filed its response to the *de facto* motion to strike on February 11, 2015.  Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Strike the Mr. Berrie, Foster, and Lohwasser Affidavits as well as Russ Berrie Catalog Excerpts (Feb. 11, 2015), ECF No. 134.

At the request of the parties, and following conferences with the parties, the court entered orders staying this action to allow the parties to conduct settlement negotiations.  Order (Feb. 17, 2017), ECF No. 138 (staying action for 90 days); Order (June 16, 2017), ECF No. 142 (extending stay).  Following the expiration of the stay, the parties reported that they were unable to reach further settlement.  Letter from Simon Gluck & Kane LLP to Ct. (July 19, 2017), ECF No. 143 (indicating that settlement of the action could not be reached and requesting that the court render a decision).  In response to the court's questions in conference, which pertained to articles for which samples were missing or for which no clear description of the merchandise had been submitted, plaintiff submitted an affidavit and additional samples.  Aff. of Mariana del Rio Kostenwein, Esq. (July 19, 2017), ECF No. 143-1 ("Kostenwein Aff.") (providing court with more detailed descriptions); Notice of Manual Filing (July 19, 2017), ECF No. 144 (physical exhibits accompanying Kostenwein affidavit).

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

The court exercises jurisdiction over this action pursuant to section 201 of the Customs Courts Act of 1980, 28 U.S.C. § 1581(a).  In cases contesting the denial of a protest, the court makes its determinations *de novo* based upon the record made before the court.  28 U.S.C. § 2640(a)(1).  The plaintiff has the burden of showing that the government's determined classification of the subject merchandise was incorrect but does not bear the burden of establishing the correct classification; instead, it is the court's independent duty to arrive at "the

*correct* result, by whatever procedure is best suited to the case at hand." *Jarvis Clark Co. v.*

*United States*, 733 F.2d 873, 878 (Fed. Cir. 1984) (footnote omitted).  Where, as here, Customs

has denied a protest without issuing an official ruling, the court considers the parties' arguments

without deference.  *Hartog Foods Int'l, Inc. v. United States*, 291 F.3d 789, 791 (Fed. Cir. 2002).

In a tariff classification dispute, "summary judgment is appropriate when there is no

genuine dispute as to the underlying factual issue of exactly what the merchandise is." *Bausch &*

*Lomb, Inc. v. United States*, 148 F.3d 1363, 1365 (Fed. Cir. 1998) (citing *Nissho Iwai Am.*

*Corp. v. United States*, 143 F.3d 1470, 1472-73 (Fed. Cir. 1998)).  In ruling on a motion for

summary judgment, the court credits the non-moving party's evidence and draws all inferences

in that party's favor.  *Hunt v. Cromartie,* 526 U.S. 541, 552 (1999) (quoting *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  A genuine factual dispute is one potentially affecting the

outcome under the governing law.  *Anderson*, 477 U.S. at 248.

The material facts as stated in this Opinion and Order are not in dispute between the

parties except where specifically indicated.  For each of the articles at issue, the court has

available samples, illustrations, or descriptions of the items in question that would be admissible

and are sufficient to allow the court to reach a classification decision upon facts as to which there

is no genuine dispute.

## B. Principles of Tariff Classification Law

Tariff classification under the HTSUS is determined according to the General Rules of

Interpretation ("GRIs") and the Additional U.S. Rules of Interpretation, both of which are part of

the legal text of the HTSUS.  The GRIs are applied in numerical order, beginning with GRI 1,

HTSUS, which provides that "classification shall be determined according to the terms of the

headings and any relative section or chapter notes."  GRI 1, HTSUS.  The chapter and section

notes of the HTSUS are not optional interpretive rules but statutory law.  *Libas, Ltd. v. United States*, 193 F.3d 1361, 1364 (Fed. Cir. 1999).

Unless there is evidence of "contrary legislative intent, HTSUS terms are to be construed according to their common and commercial meanings."  *La Crosse Tech., Ltd. v. United States*, 723 F.3d 1353, 1358 (Fed. Cir. 2013) (quoting *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999)).  The common meaning of a tariff term is a question of law to be decided by the court, while the determination of whether a particular item fits within that meaning is a question of fact.  *E.M. Chems. v. United States*, 920 F.2d 910, 912 (Fed. Cir. 1990) (citation omitted).

In order to define tariff terms, the court "may consult lexicographic and scientific authorities, dictionaries, and other reliable information" or may rely on its "own understanding of the terms used."  *Baxter Healthcare Corp. of Puerto Rico v. United States*, 182 F.3d 1333, 1337-38 (Fed. Cir. 1999) (citation omitted).  Where a tariff term has various definitions or meanings and has broad and narrow interpretations, the court must determine which definition best expresses the congressional intent.  *See Richards Med. Co. v. United States*, 910 F.2d 828, 830 (Fed. Cir. 1990).

Although not part of U.S. tariff law and therefore not legally binding on the court, the Explanatory Notes ("ENs") to the Harmonized Commodity Description and Coding System ("Harmonized System" or "HS") are evidence of the intent of the drafters of the Harmonized System.  H.R. Rep. No. 100-576, at 549 (1988) (Conf. Rep.), *reprinted in* 1988 U.S.C.C.A.N. 1547, 1582.  Explanatory Notes "are generally indicative of the proper interpretation of a tariff

provision." *Degussa Corp. v. United States*, 508 F.3d 1044, 1047 (Fed. Cir. 2007) (citation

omitted).[2]

### C. Tariff Classification of the Articles Remaining in Dispute

### 1. The "Trolls"

The court's decision regarding the classification of the Trolls is based on the undisputed

facts stated by the parties in their respective motions for summary judgment and the court's *in*

*camera* analysis of the evidence, including in particular the physical samples.  Where no sample

was provided, the court considered catalog pages submitted by plaintiff as exhibits in support of

its motion for summary judgment.[3]

Trolls are three-dimensional figures, made principally of plastic (with one exception,

discussed herein), in various sizes (up to one foot in length) and styles.  *See, e.g.*, Pl.'s Exs. 2-41

(Sept. 15, 2014), ECF No. 119 (images of various Trolls).  They are designed to resemble

mythical creatures.  The Trolls come with removable or non-removable articles of "attire" of

textile composition (including hats, coats, pants, and dresses).  The textile articles in which the

Trolls are dressed include miniature attire articles made to resemble various garments such as

wedding gowns, tuxedos, Santa Claus suits, and witches' costumes.  Some Trolls come with

attached items, including, for example, miniature books and brooms made of fabric and

---

[2] Citations to the Explanatory Notes ("ENs") in this Opinion and Order are to the 1986 edition, the relevant provisions of which were in effect in 1992.  *See* Customs Co-operation Council, Harmonized Commodity Description and Coding System (1st ed. 1986).

[3] Unless otherwise indicated, all citations to catalog pages are to exhibits plaintiff submitted in support of its original and current motions for summary judgment.  *See* Pl.'s Exs. (Sept. 15, 2014), ECF No. 119; *see also* Letter from Simon Gluck & Kane LLP to Ct. (Dec. 12, 2014), ECF No. 125 (submitting revised versions of exhibits 42 through 46, exhibit 50, and submitting an additional exhibit) ("Pl.'s Rev. Exs.").

miniature boxes resembling wrapped presents.  *See, e.g.*, Pl.'s Ex. 8 (image of Caroler Trolls

holding books).

a. Tariff Classifications Claimed by the Parties

Upon liquidation, Customs classified the Trolls in subheading 9503.49.00, HTSUS

("Other toys . . . : Toys representing animals or non-human creatures (for example, robots or

monsters) . . . : Other"), subject to duty at 6.8% *ad val*.  *See, e.g.*, Am. Compl. ¶ 12(a)-(n); Def.'s

Am. Answer ¶ 12.  Before the court, the United States claims that this is the correct

classification.  *See* Def.'s Mot. 14-16.

For the Trolls that are outfitted in a Christmas-related theme, plaintiff claims

classification in subheading 9505.10.25, HTSUS ("Festive, carnival or other entertainment

articles, including magic tricks and practical joke articles . . . : Articles for Christmas

festivities . . . : Christmas ornaments: Other: Other"), temporarily free of duty according to

subheading 9902.95.05, HTSUS.  Am. Compl. ¶ 19; Pl.'s Mot. 9-11.  Plaintiff claims that all

other Trolls at issue in this case should be classified in subheading 9505.90.60, HTSUS

("Festive, carnival or other entertainment articles, including magic tricks and practical joke

articles . . . : Other: Other"), subject to duty at 3.1% *ad val*.  Am. Compl. ¶ 21; Pl.'s Mot. 9-11.

b. Tariff Classification of the Trolls

As directed by GRI 1, HTSUS, the court first considers the terms of the headings and any

relative section and chapter notes.

Chapter 95, HTSUS ("Toys, Games and Sports Equipment; Parts and Accessories

Thereof") is organized such that the first three headings apply specifically to articles identified as

"toys."  Within the chapter, heading 9501, HTSUS applies to "[w]heeled toys designed to be

ridden by children," heading 9502, HTSUS carries the article description "[d]olls representing

only human beings," and heading 9503, HTSUS, the heading advocated by defendant, applies to

"[o]ther toys." The next two headings do not refer specifically to toys in the respective article

descriptions. Heading 9504, HTSUS applies to "[a]rticles for arcade, table or parlor games" and

heading 9505, HTSUS, the heading advocated by plaintiff, has the article description "[f]estive,

carnival or other entertainment articles, including magic tricks and practical joke articles."

Whether or not they are described by the term "toys," the court eliminates heading 9502

from consideration because, even if the Trolls are considered to be "dolls," they are not "dolls

representing only human beings." *See* Heading 9502, HTSUS. Instead, they are intended to

represent mythical, non-human creatures.[4] While some of the features of the Trolls resemble

human features, Trolls are not of human proportions, and they have cartoon-like, exaggerated

and distorted features, including a flattened head that is about one-third of the total size of the

body, cartoon-like faces with oversized eyes, ears, and noses, hands with only four digits, and

feet with only four toes. Some have non-human skin tones such as lime green. *See, e.g.*, Pl.'s

Rev. Ex. 43 (Dec. 12, 2014), ECF No. 125 (catalog image of Frankenstein Troll). Attached to

the head of each Troll are strands of fluffy artificial "hair" in any of various colors (including

red, blue, green, and black) that extends upwards, nearly equaling the height of the Troll's body.

Heading 9503, by using the term "[o]ther toys," includes within its scope those toys that

do not fall within the scope of headings 9501 and 9502, HTSUS. *See also* EN 95.03 (instructing

---

[4] The Explanatory Notes confirm the court's understanding of the intended scope of heading 9502 relative to that of heading 9503. EN 95.02 ("Dolls Representing Only Human Beings") must be read together with EN 95.03, which informs the reader that heading 95.03 includes within its scope "[t]oys representing animals or non-human creatures even if possessing predominantly human physical characteristics (e.g., angels, robots, devils, monsters), including those for use in marionette shows." Further clarifying the distinction between the "dolls" of heading 95.02 and the "other toys" of heading 95.03, EN 95.02 provides that heading 95.02 excludes "[t]in soldiers and the like (**heading 95.03**)" (emphasis in original) which the note considers to be toys but not dolls. *See* EN 95.03(A)(1). The Explanatory Notes instruct, additionally, that dolls "of a caricature type" (i.e., dolls depicting human beings, but typically with exaggerated features) are included in heading 95.02. EN 95.02.

that heading 95.03 covers "all toys" not included in headings 95.01 and 95.02).  Heading 9503,

HTSUS, therefore, encompasses the Trolls if they are described by the term "toys."

    Common dictionary definitions of the term "toy" typically refer to an article intended

solely or primarily for amusement rather than practical use.  *See* Webster's Third New

International Dictionary 2419 (1986) (defining a "toy" as "something designed for amusement or

diversion rather than practical use"); 18 The Oxford English Dictionary 329 (2d ed. 1989)

(defining a "toy" as "[a] material object for children or others to play with (often an imitation of

some familiar object); a plaything; also something contrived for amusement rather than for

practical use"); *see also* EN to Chapter 95 ("This Chapter covers toys of all kinds whether

designed for the amusement of children or adults.").

    That the Trolls are designed for amusement (either of children or adults) is amply

demonstrated by the samples and illustrations of these articles.  The cartoon-like faces and

bodies create a whimsical and fanciful impression and the "apparel" in which the Trolls are

clothed contribute further to a conclusion that these articles are intended to amuse.  The plastic

and fabric composition, like the humorous features, is typical of a toy rather than a decorative

statuette or figurine.  Based on the undisputed facts, plaintiff is unable to show that the Trolls are

not "toys" within the scope of heading 9503, HTSUS ("Other toys").

    Plaintiff argues that even if the Trolls are *prima facie* described by the terms of

heading 9503, HTSUS, they also fall within the scope of heading 9505, HTSUS ("Festive,

carnival or other entertainment articles, including magic tricks and practical joke articles") and

that the latter heading should be preferred to heading 9503, HTSUS by application of the rule of

relative specificity set forth in GRI 3(a), HTSUS.  Pl.'s Mot. 17.  The court must reject this

argument.  The terms of heading 9505, HTSUS cause the court to conclude that heading 9505,

HTSUS, while including a certain class of goods (identified below) that may be considered to

fall within some definitions of the word "toy," was never intended to encompass doll-like toys

representing creatures, such as the Trolls at issue herein.

The term "[f]estive, carnival or other entertainment articles" as used in heading 9505,

HTSUS has been the subject of considerable litigation, but the term has not been construed by

the courts to encompass toys generally or, specifically, a doll-like toy representing a non-human

creature.  Plaintiff grounds its argument that the Trolls are described by this heading term in the

clothing items with which the Trolls are dressed, which have themes related to a holiday or other

festive event or a celebration.  *See* Pl.'s Mot. 13 (stating that "[a]ll of the items bear motifs,

symbols, and contain symbolic content, traditionally associated with particular festive

occasions").  But however dressed, these goods are still toys, i.e., they are designed to provide

amusement.

The intended meaning of the heading term "festive, carnival or other entertainment

articles" is vague, and common dictionary definitions consulted by the court, which regard the

term "entertainment" as a noun, offer little clarification of the meaning of the term when used as

an adjective.  While it can be suggested, as plaintiff's argument might be taken to connote, that

toys are, by definition, "entertainment articles," such a contention blurs the distinctions between

the meanings of the terms "amusement" and "entertainment."  Moreover, absent an indication of

clear legislative intent, the court is not convinced that Congress could have intended for heading

9505, HTSUS to include countless varieties of toys that offer "entertainment" in the form of

"amusement," thus overlapping the scopes of headings 9501, 9502, and 9503, HTSUS.  The

HTSUS, like the HS on which its nomenclature is based, is designed such that GRI 1 will be

paramount, and in that sense GRI 1 can be expected to resolve most classification issues.

Plaintiff has not convinced the court that Congress, by including heading 9505 in the HTSUS,

intended to sweep into the scope of this heading any type of toy simply because it displays a

design related to a festival or holiday.

Here, due to the vagueness inherent in the heading term "festive, carnival or other

entertainment articles" when considered in relation to goods such as the Trolls, resort to the

Explanatory Notes for clarification is particularly warranted.  The Explanatory Notes confirm the

court's interpretation of the scope of heading 9505, HTSUS as it relates to the Trolls.  EN 95.05

gives two separate lists of examples to illustrate the scope of the heading.  The first list,

(list "A"), is of four groups of products that are examples of "[f]estive, carnival or other

entertainment articles," with the guidance that these articles "in view of their intended use are

generally made of non-durable material."  EN 95.05.  Listed as examples are:

> (1) Decorations such as festoons, garlands, Chinese lanterns, etc., as well as various decorative articles made of paper, metal foil, glass fibre, etc., for Christmas trees (e.g., tinsel, stars, icicles), artificial snow, coloured balls, bells, lanterns, etc.  Cake and other decorations (e.g., animals, flags) which are traditionally associated with a particular festival are also classified here.

> (2) Articles traditionally used at Christmas festivities, e.g., artificial Christmas trees . . . nativity scenes, Christmas crackers, Christmas stockings, imitation yule logs.

> (3) Articles of fancy dress, e.g., masks, false ears and noses, wigs, false beards and moustaches . . . and paper hats.  However, the heading **excludes** fancy dress of textile materials, of **Chapter 61** or **62**.

> (4) Throw-balls of paper or cotton-wool, paper streamers (carnival tape), cardboard trumpets, "blow-outs", confetti, carnival umbrellas, etc.

EN 95.05 (emphasis in original).  The examples in paragraphs (A)(1) and (A)(4), above, have in

common their decorative character.  The examples in (A)(2) serve to clarify that the heading

includes a class of articles traditionally used at Christmas festivities (or, by implication, other

holiday festivals), whether or not decorative in character.  This is shown by the example of the

traditional English Christmas crackers (or "cracker bon bons," which when opened at both ends

release party favors or candy), which might not be seen as "decorative" in an ordinary sense but

can be considered "festive" due to their traditional association with the Christmas holiday.  They

are collections of articles, including edible ones, and it would not be correct to consider them

toys (although they may contain small toys as well as candy and such).  The example of

Christmas stockings is to a class of articles that are decorative, festive, and functional, i.e., they

are designed to hold small presents as well as serve as a home decoration during the Christmas

season.  Trolls are not analogous to a Christmas stocking (although they might be placed inside

one).  The example in (A)(3) of "fancy dress" articles (excluding textile apparel) sheds further

light on the meaning of the term "festive, carnival or other entertainment articles" by including a

class of goods made for use at certain special occasions, e.g., costume balls and masquerades.

But none of the examples in the four groups listed in (A) is of goods that ordinarily would be

considered "toys."

The second list of examples in EN 95.05, (list "B"), is directed to the term in HS heading

95.05, "including conjuring tricks and novelty jokes" that modifies the term "festive, carnival

and other entertainment articles."  EN 95.05 explains that the heading includes:

> **Conjuring tricks and novelty jokes,** e.g., packs of cards, tables, screens
> and containers, specially designed for the performance of conjuring tricks;
> novelty jokes such as sneezing powder, surprise sweets, water-jet
> button-holes and "Japanese flowers".

EN 95.05 (emphasis in original).  These examples are of articles that are "entertainment" articles,

but they illustrate distinctly different classes of goods than do the "festive" and decorative

examples in list (A).  Unlike the examples in list (A), some articles of a type exemplified by

list (B) (which includes "water-jet button-holes") might be considered to be "toys" in the broad

sense of the term.  In this regard, it is noteworthy that Congress indicated that some goods that

may be described as "toys" could fall within the scope of heading 9505, HTSUS when it

temporarily suspended the duty on "articles . . . provided for in heading 9502, 9503, or 9504, or

*subheading 9505.90* (except balloons, marbles, dice, and diecast vehicles), valued not over 5¢

per unit."  Subheading 9902.71.13, HTSUS (emphasis added).  Subheading 9505.90 contains the

following footnote (footnote 1) directing the reader to this temporary duty suspension: "Duty on

certain toys temporarily suspended.  See subheading 9902.71.13."  The note applies to

subheading 9505.90, one of the two subheadings of heading 9505, HTSUS.  That subheading

applies to goods of the heading *other than* "[a]rticles for Christmas festivities and parts and

accessories thereof" (subheading 9905.10, HTSUS).

 The "magic tricks and practical joke articles" term in the article description for heading

9505, HTSUS is the U.S. expression of the international HS term "including conjuring tricks and

novelty jokes."  EN 95.05.  By using the term "including magic tricks and practical joke articles"

as a modifier of the general term "festive, carnival or other entertainment articles," Congress

indicated that the general term must be read to include two classes of goods, "magic tricks" and

"practical joke articles," that ordinarily might not be considered to fall within that term.  *See*

Norman J. Singer & Shambie Singer, Statutes and Statutory Construction § 47.23 (7th ed. 2014)

(Sutherland) (explaining that "[t]he maxim *expressio unius est exclusio alterius*" instructs that

"where a statute designates . . . the persons and things to which it refers, courts should infer that

all omissions were intentional exclusions" (footnotes omitted)); *see also DWA Holdings LLC v.*

*United States*, 889 F.3d 1361, 1371 (Fed. Cir. 2018) ("[W]here Congress includes particular

language in one section of a statute but omits it in another section of the same Act, it is generally

presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."

(quoting *Brown v. Gardner*, 513 U.S. 115, 120 (1994))).  In this case, by including "magic tricks

and practical joke articles" in heading 9505, HTSUS, articles that are not normally decorative or utilitarian, but that in some instances may be considered "toys," Congress intended to treat entertainment articles described by the terms "magic tricks and practical joke articles" differently than the "toys" classified under headings 9501, 9502, and 9503, HTSUS.  The term "including magic tricks and practical joke articles" connotes that only these two special classes of goods (some of which may be describable as toys), as opposed to toys generally, fall within the scope of heading 9505.

In summary, the undisputed facts, and in particular the samples, demonstrate that the Trolls, which have the amusing physical characteristics of toys, are not decorations or ornaments. Whether or not they are dressed in outfits with Christmas-related themes, they cannot truthfully be described as articles "traditionally used at Christmas festivities," as are artificial Christmas trees, nativity scenes, Christmas crackers, Christmas stockings, or imitation yule logs.  They have the physical composition (plastic and fabric) and appearance of doll-like toys rather than the decorative characteristics of Christmas ornaments or Christmas tree ornaments.  And while they are toys that provide "amusement," the Trolls are not within the class of "entertainment" articles that have the characteristics of magic tricks, novelty, or practical joke articles.  Because of the terms of heading 9505, HTSUS, and because of the common characteristics of the classes and kinds of articles the drafters intended heading 95.05 to cover, as shown by the examples in EN 95.05, classifying the Trolls under heading 9505, HTSUS impermissibly would expand the scope of the heading to encompass a class of goods, i.e., doll-like toys, that do not share any of the common characteristics of the goods of that heading.

Plaintiff advances various arguments in an attempt to show that heading 9505, HTSUS includes within its scope the Trolls that are at issue in this case.  For the reasons discussed below, the court does not find merit in these arguments.

Citing various decisions of this Court and the Court of Appeals for the Federal Circuit ("Court of Appeals"), plaintiff argues, first, that classification of the Trolls under heading 9505, HTSUS, is required by case law.  Pl.'s Mot. 10-15.  Plaintiff asserts that "[t]he Trolls were manufactured and imported together attired in clothing bearing symbols associated with several holidays, including Christmas, Thanksgiving, Halloween, Easter, St. Patrick's Day, and Valentine's Day, as well as private festive occasions such as Bat Mitzvahs, Birthdays, and Weddings."  *Id.* at 9.  Plaintiff relies on *Midwest of Cannon Falls, Inc. v. United States*, 122 F.3d 1423 (Fed. Cir. 1997), as well as various cases interpreting that decision, for the proposition that the Trolls must be classified under heading 9505, HTSUS because of close association with a festive occasion and use or display principally during that festive occasion.  *Id.* at 12.  Plaintiff also argues that heading 9505, HTSUS, which it characterizes as a provision controlled by use within the scope of Additional U.S. Rule of Interpretation 1(a), HTSUS, is to be preferred by application of GRI 3(a), HTSUS.  Pl.'s Mot. 17-20.  It argues that such is the case whether the court considers heading 9503, HTSUS to be an *eo nomine* provision or a provision controlled by use.  *Id.* at 20.  The court is not persuaded by these arguments.  *Midwest of Cannon Falls* did not involve the classification of any article similar to Trolls.  That case involved the classification of 27 articles, 23 of which were found to be Christmas ornaments and classified accordingly under heading 9505, HTSUS.  *Midwest of Cannon Falls*, 122 F.3d at 1429.  Of the 23 Christmas ornaments, only two—a "[w]ooden pull toy (ice skater)" and a "[t]oy smoker (Santa)"—were described as "toys" in the opinion.  Both of these articles, however, were found to be Christmas

ornaments and determined for tariff classification purposes to be "Christmas ornaments of wood" classified under subheading 9505.10.15, HTSUS. *Id.* The court finds nothing in the samples or illustrations of the Trolls that causes the court to conclude that any of the Trolls are Christmas ornaments. The other four articles at issue in *Midwest of Cannon Falls* were described by the Court of Appeals as a "[h]eart-shaped metal wreath," a "[j]ack-o'-lantern earthenware mug," a "[j]ack-o'-lantern earthenware pitcher," and an "Easter water globe." *Id.* The Court of Appeals determined that these four articles were "Other festive articles" classifiable under heading 9505, HTSUS. *Id.* These articles are each dissimilar to Trolls: the pitcher and mug are tableware, and the wreath and globe are decorative articles. In summary, *Midwest of Cannon Falls* does not hold that doll-like toys such as the Trolls will be classified under heading 9505, HTSUS as "festive . . . or other entertainment articles" simply because they are outfitted in holiday or festive garb.

Plaintiff argues, further, that "[t]o the extent that the question at issue in this discussion concerns the consideration of two competing tariff provisions, each lacking defining or limiting legal notes, *Midwest [of Cannon Falls]* and the *Russ Berrie Festive Jewelry Case* are the most relevant cases among those involving the proper classification of 'festive articles.'" Pl.'s Mot. 12. Plaintiff's latter citation is to *Russ Berrie & Co. v. United States*, 27 CIT 1438, 281 F. Supp. 2d 1351 (2003), *rev'd*, 381 F.3d 1334 (Fed. Cir. 2004). The decision of the Court of Appeals in *Russ Berrie & Co.* held that certain jewelry items with Halloween and Christmas themes were correctly classified under heading 7117, HTSUS ("Imitation jewelry"), not heading 9505, HTSUS, by application of the principle of relative specificity stated in GRI 3(a). *Russ Berrie & Co.*, 381 F.3d at 1338. Because it did not involve the issue of whether doll-like toys

could fall within the scope of heading 9505, HTSUS, the case is not a precedent requiring classification of the Trolls under that heading.

In support of its position in favor of classification of the Trolls as "festive articles," plaintiff cites two other decisions of the Court of Appeals, *Michael Simon Design, Inc. v. United States*, 501 F.3d 1303 (Fed. Cir. 2007) and *Park B. Smith, Ltd. v. United States*, 347 F.3d 922 (Fed. Cir. 2003).  *See* Pl.'s Mot. 10-13.  Because neither case involved the classification of "toys," neither establishes a precedent controlling on the issue the court must resolve in this case. *Park B. Smith* concerned the tariff classification of placemats, table napkins, table runners, and woven rugs, all of which either were decorated with holiday symbols or were in designs or colors often associated with holidays or seasons.  *Park B. Smith*, 347 F.3d at 926.  The Court of Appeals ruled that those of the articles "with symbolic content associated with a particular recognized holiday" were correctly classified under heading 9505, HTSUS, but those "that are merely cheerful or colorful or associated with specific seasons of the year, either by symbol or color" and are not associated with a particular festive holiday do not meet the criteria of *Midwest of Cannon Falls* and must be classified outside of chapter 95, HTSUS.  *Id.* at 929.  *Michael Simon Design* is also inapposite.  That case affirmed a decision of this Court, *Michael Simon Design, Inc. v. United States*, 30 CIT 1160, 452 F. Supp. 2d 1316 (2006), holding that certain sweaters with Christmas or Halloween motifs were properly classified under heading 9505, HTSUS, as festive articles.  *Michael Simon Design*, 501 F.3d at 1307.  The decision, in a case involving apparel, not toys, entailed the application of notes to section XI, HTSUS and to chapter 95, HTSUS that are not relevant to the classification of the Trolls in this case.

In summary, *Midwest of Cannon Falls*, *Russ Berrie & Co.*, *Park B. Smith*, and *Michael Simon Design* all involved the tariff classification of products other than doll-like toys such as

the Trolls.  Each of those cases involved the question of whether an article with a utilitarian

function (including an "apparel" or "jewelry" function) also could be a "festive, carnival or other

entertainment article[]" within the scope of heading 9505, HTSUS due to a "festive" or

"holiday" decorative characteristic.  That question is not presented by the Trolls, which have no

utilitarian function and are toys, not decorations.  Plaintiff is incorrect in advocating that these

decisions of the Court of Appeals are controlling on the issue of classification of the Trolls.[5]

The court is not convinced by plaintiff's argument that the Trolls are "festive, carnival or

other entertainment articles" within the meaning of the heading term due to the way they are

dressed, i.e., in garb associated with holidays or festivals.  *See* Pl.'s Mot. 13.  The clothing and

accessories of the Trolls do not change the doll-like or toy-like character of this merchandise and

instead may be observed to *contribute to* the amusing qualities.  Explanatory Note 95.02 is

instructive in providing that dolls of HS heading 95.02 may be "dressed."  Under plaintiff's

logic, it could be contended that a doll representing a human being outfitted in a dress with a

holiday theme would be *prima facie* classifiable under heading 9505, HTSUS even though that

heading was not intended to encompass dolls or toys generally.  Such a contention would be

contrary to the organization of chapter 95, HTSUS and the guidance provided in ENs 95.02,

95.03, and 95.05.  As the court has explained, the headings of chapter 95, HTSUS are organized

such that the toys of headings 9501 through 9503, HTSUS are distinguishable from the goods

that are classified in heading 9505, HTSUS.  The latter includes magic tricks and practical joke

---

[5] Plaintiff also cites a number of tariff classification decisions of the Court of
International Trade that plaintiff views as applying principles established by the cited appellate
decisions.  None of these citations is to a case in which merchandise analogous to the Trolls at
issue in this action were held to be classified under heading 9505, HTSUS.

articles, but it would be error to construe the heading to include other classes or kinds of toys, such as the Trolls.

In conclusion, the Trolls at issue in this case are not described by the terms of heading 9505, HTSUS, when those terms are properly construed.  The Trolls instead answer to a descriptive term of heading 9503, HTSUS ("Other toys").  The parties identify no other candidate headings, and the court finds none.  Because no heading other than heading 9503, HTSUS contains a term describing the Trolls, the court resolves the question of the correct heading according to GRI 1, HTSUS and therefore does not reach an issue of relative specificity that would call for the application of GRI 3(a), HTSUS.  Therefore, the Trolls are properly classified under heading 9503, HTSUS.[6]

The correct subheading for the Trolls is subheading 9503.49.00, HTSUS ("Other toys . . . : Toys representing animals or non-human creatures . . . : Other"), subject to duty at 6.8% *ad val*., with the exception of one Troll, identified as Style No. 2385, "Soft Body Troll in Candy Cane Print Pajamas."  This Troll, a sample of which plaintiff provided in its separate submission, differs from the other Trolls at issue in having a fabric-covered body stuffed with a soft material; only the face of the article is of plastic.  *See* Notice of Manual Filing at Ex. 1 (submitting physical sample to court).  Because this model of Troll is a stuffed toy, the correct subheading is 9503.41.10, HTSUS ("Other toys . . . : Toys representing animals or non-human

---

[6] As the court discussed previously, during the time that the entries at issue were made, "articles . . . provided for in heading 9502, 9503, or 9504 or subheading 9505.90 . . . valued not over 5¢ per unit" qualified for duty-free tariff treatment according to subheading 9902.71.13, HTSUS.  The court has reviewed the entry documents for each article that it has determined to be properly classified in heading 9503, HTSUS or subheading 9505.90, HTSUS and determined that, based on undisputed evidence, none of these articles had a dutiable unit value of 5¢ or less. Accordingly, none of these articles qualify for classification in subheading 9902.71.13, HTSUS, free of duty.

creatures . . . : Stuffed toys"), temporarily free of duty according to subheading 9902.95.02,

HTSUS ("Stuffed or filled toys representing animals or nonhuman creatures, not having a spring

mechanism and not exceeding 63.5 cm in either length, width, or height (provided for in

subheading 9503.41.10 or 9503.49.00)").

### 2. The "Goonie Goblins" Finger Puppets

Next in dispute are articles of Style No. 3030, "Goonie Goblins."  Based on plaintiff's

submitted catalog pages and the undisputed facts as submitted by the parties, Goonie Goblins are

rubber finger puppets that come in six designs resembling such creatures as a bat, medusa, and a

devil, among others.  Pl.'s Rev. Ex. 43.  The finger puppets come in six different colors

(depending on design), slip onto the wearer's finger approximately to the first knuckle, and

contain arms, wings, or antennae that stick out from the sides of the puppet.  *Id*.

### a. Tariff Classifications Claimed by the Parties

Upon liquidation, Customs classified the Goonie Goblins in subheading 9503.90.60,

HTSUS ("Other toys . . . : Other: Other toys (except models), not having a spring mechanism"),

subject to duty at 6.8% *ad val*.  *See* Am. Compl. ¶ 12(oo); Def.'s Am. Answer ¶ 12.  Plaintiff

argues before the court that the merchandise should be classified in subheading 9505.90.60,

HTSUS ("Festive . . . or other entertainment articles . . . : Other: Other"), subject to duty at 3.1%

*ad val*.  Am. Compl. ¶ 21.  Defendant maintains that the Goonie Goblins must be classified as

toys under heading 9503, HTSUS.  Def.'s Mot. 14-16.

### b. Tariff Classification of the Goonie Goblins

The analysis the court applied to the Trolls applies also to the Goonie Goblins.  EN 95.03

states that the heading covers "[t]oys representing . . . non-human creatures," including,

explicitly, "devils" and "monsters," and clarifies that this class or kind of goods may include

puppets by specifying that it includes "those for use in marionette shows."  EN 95.03.  Goonie

Goblins are *prima facie* classifiable under heading 9503, HTSUS.

Plaintiff claims classification under heading 9505, HTSUS ("Festive . . . or other

entertainment articles").  Pl.'s Mot. 20-29.  The court rejects this claim because the Goonie

Goblins are not described by the terms of heading 9505, HTSUS as properly interpreted.  They

are toys, not decorations.  The connection with Halloween is only that the toys have

Halloween-related themes, and in that respect these goods cannot truthfully be described as a

traditional article of celebration or festivity.  While intended for amusement, they do not belong

to the class or kind of "magic tricks" or "practical joke articles" encompassed by heading 9505,

HTSUS.

The court, therefore, concludes that the Goonie Goblins are classified under

heading 9503, HTSUS ("Other toys . . .").  The applicable subheading is 9503.49.00, HTSUS

("Other toys . . . : Toys representing animals or non-human creatures (for example, robots and

monsters) . . . : Other"), subject to duty at 6.8% *ad val*.  The court determines classification in

this subheading rather than the more general one under which the Goonie Goblins were classified

upon liquidation, subheading 9503.90.60, HTSUS ("Other toys . . . : Other: Other toys (except

models), not having a spring mechanism"), also subject to duty at 6.8% *ad val*.  This was

incorrect in ignoring the defining characteristic of the merchandise, which is as toys representing

non-human creatures.

### 3. The "Haunting Horrors"

The merchandise advertised by plaintiff in its catalog as Style No. 14088, "Haunting

Horrors," is described by the parties' submissions as three-inch-tall plastic (polyvinyl chloride)

figures.  Pl.'s Rev. Ex. 43; *see* Pl.'s Reply 24-25.  They come in three designs: a hairy, green

monster with horns, a grim reaper holding a scythe, and a witch stirring a bubbling cauldron.

Pl.'s Rev. Ex. 43.  Each has what plaintiff calls a "ghostlike holographic face," Am. Compl.

¶12(pp), which displays a three-dimensional image of a skull.  *Id.*

### a. Tariff Classifications Claimed by the Parties

Upon liquidation, Customs classified the Haunting Horrors in subheading 9503.49.00,

HTSUS ("Other toys . . . : Toys representing animals or non-human creatures . . . : Other"),

subject to duty at 6.8% *ad val*.  *See* Am. Compl. ¶ 12(pp); Def.'s Am. Answer ¶ 12.  Defendant

maintains that classification of these articles as toys under heading 9503, HTSUS is required.

Def.'s Mot. 13-16.

Plaintiff contends that the Haunting Horrors should have been classified in

subheading 9505.90.60, HTSUS ("Festive, carnival or other entertainment articles, including

magic tricks and practical joke articles . . . : Other: Other"), subject to duty at 3.1% *ad val*.  Am.

Compl. ¶ 21; Pl.'s Reply 24-28.

For the reasons discussed below, the court concludes that plaintiff has not met its burden

of showing that the classification by Customs upon liquidation was incorrect.

### b. Tariff Classification of the Haunting Horrors

The court eliminates heading 9505, HTSUS from consideration because the Haunting

Horrors, like the Trolls and the Goonie Goblins finger puppets, are toys of a type that do not fall

within the scope of that heading.  Simply stated, they are plastic articles that have the

characteristics of toys, not the characteristics of decorative figurines or of any other of the classes

of "festive, carnival or other entertainment articles" that fall within the scope of heading 9505,

HTSUS.  The holographic "skull" feature, as are the other grotesque physical features, are

characteristic of articles of amusement rather than of the types of goods that heading 9505,

HTSUS was intended to encompass.

The court also eliminates heading 9502, HTSUS ("Dolls representing only human beings . . .") from consideration because these figures are not "dolls" representing human beings. Although the witch and grim reaper have some human-like characteristics, the Haunting Horrors represent imaginary creatures with grotesque features.

In summary, the court agrees with defendant that classification under heading 9503, HTSUS is correct. Because the Haunting Horrors are toys representing non-human creatures, the correct subheading is 9503.49.00, HTSUS ("Other toys . . . : Toys representing animals or non-human creatures . . . : Other"), subject to duty at 6.8% *ad val*.

### 4. The "Bobbling Bones"

As described in the submissions, Style No. 18179, "Bobbling Bones," are described in plaintiff's catalog as self-standing "push puppets" made of plastic that are four-and-a-half inches tall. Pl.'s Rev. Ex. 43 (catalog image of Bobbling Bones from plaintiff's 1992 Halloween catalog). These puppets are composed of three main segments: a base in one of four colors, a headstone featuring a saying, and the upper half of a skeleton's body, wearing a bow tie, which appears to be popping up from the top of the headstone. *Id.* The Bobbling Bones come in four designs, which differ in the color of the base and the saying featured on the headstone; these sayings are: "R.I.P.," "Trick or Treat," "Happy Haunting," and "Ghoulish Greetings." *Id.* When the base of a Bobbling Bones figure is depressed, the arms, skull, and torso of the skeleton become limp. *See* Kostenwein Aff. ¶ 6 (explaining that the functioning of the Bobbling Bones is similar to that of the "Lazy Bones" collapsible skeleton article submitted to the court).[7] Once the

---

[7] Samples of Bobbling Bones were not available to the court. As an alternative, plaintiff submitted a collapsible string puppet ("Lazy Bones"). *See* Notice of Manual Filing at Ex. 3 (July 19, 2017), ECF No. 144 (collapsible skeleton similar to the "Bobbling Bones"). This article varies somewhat from the catalog illustrations, in particular because it lacks a tombstone (continued . . .)

pressure on the bottom of the base is released, the bones of the skeleton snap back into the

original, upright position.  *See id.*

### a. Tariff Classifications Claimed by the Parties

Upon liquidation, Customs classified the Bobbling Bones in subheading 9503.90.60,

HTSUS ("Other toys . . . : Other: Other toys (except models), not having a spring mechanism"),

subject to duty at 6.8% *ad val*.  *See* Am. Compl. ¶ 12(qq); Def.'s Am. Answer ¶ 12.  Defendant

contends that the Bobbling Bones were properly classified on liquidation.  *See* Def.'s Mot. 14-16.

Plaintiff argues that the correct classification for the Bobbling Bones is in subheading

9505.90.60, HTSUS ("Festive, carnival or other entertainment articles, including magic tricks

and practical joke articles . . . : Other: Other"), subject to duty at 3.1% *ad val*.  Am. Compl. ¶ 21;

Pl.'s Mot. 26-28.

### b. Tariff Classification of the Bobbling Bones

The Bobbling Bones push puppets have the amusing characteristics of toys.  As shown in

the catalog illustration, *see* Pl.'s Rev. Ex. 43, they are not dolls and in any event depict partial

skeletons, not live or complete human beings, so the court may eliminate heading 9502, HTSUS

("Dolls representing only human beings . . .") from consideration.  Heading 9503, HTSUS

("Other toys . . ."), which is intended to encompass toys not classified in headings 9501 and

9502, HTSUS contains a term describing these push puppets.

Plaintiff maintains that heading 9505, HTSUS is the more appropriate heading in which

to classify the goods because, even if the Bobbling Bones are *prima facie* classifiable in

heading 9503, HTSUS, the goods must be classified according to their principal use, which

_____

(. . . continued)
component and is a complete skeleton, but has a spring mechanism in the base and in that respect
is similar to the description of the Bobbling Bones articles.  *See* Pl.'s Rev. Ex. 43 (Dec. 12,
2014), ECF No. 125 (catalog image of Bobbling Bones).

plaintiff contends is as a "festive article."  Pl.'s Reply 24-28.  The court is not persuaded by this

argument.  The Bobbling Bones are not decorative articles, nor do they have the characteristics

of the other types of festive or other entertainment articles encompassed by heading 9505,

HTSUS.  The association of the Bobbling Bones with Halloween is the depiction of a tombstone,

a part of a skeleton, and a Halloween-themed saying, but this association is the source of the

amusing characteristic of these articles as Halloween-themed toys.  As the court has discussed,

heading 9505, HTSUS is not so broad as to encompass any kind of a toy simply because it has

the theme of a holiday or festive occasion.

The Bobbling Bones have amusing characteristics, but they lack the characteristics of the

magic tricks, practical joke articles and similar novelty items that find classification within

heading 9505, HTSUS.  The "bobbling" feature is an amusing feature, not a "magic trick" or

"practical joke" feature.

As to the correct subheading, the court concludes that the subheadings applicable to

"[t]oys representing animals or non-human creatures" does not describe the whole article, which

consists of a tombstone as well as a partial skeleton.  The subheading under which the article was

liquidated, 9503.90.60, HTSUS ("Other toys . . . : Other: Other toys (except models), not having

a spring mechanism"), is also incorrect.  The court so concludes because these goods are "push

puppets" that require a spring mechanism in the base for their operation (as does "Lazy Bones").

Therefore, by operation of GRI 6, HTSUS the correct subheading is 9503.90.70, HTSUS ("Other

toys . . . : Other: Other").  The duty rate is the same, 6.8% *ad val*.

### 5. The Articles of the Trick 'n Treat Fun Center

Style No. 18181 is advertised in the Russ Berrie & Co. catalog as the "Trick 'n Treat Fun

Center."  Pl.'s Rev. Ex 43.  No sample was provided.  According to plaintiff, the Trick 'n Treat

Fun Center is a collection of "similar Halloween gift items packaged and sold together."  Pl.'s

Mot. 11.  Plaintiff states that the "items are collectively packaged and sold together at retail in a

jack-o'-lantern-designed gift basket" and "are intended as give-away items to trick or treaters on

Halloween."  Pl.'s Reply 28.  The set contains an assortment of five articles: (1) "multiplying

viewers" (36 pieces); (2) "puzzle watches" (36 pieces); (3) "squirt balls" (24 pieces); (4) "paint

palettes" (36 pieces); and (5) "stencil sets" (36 pieces).  Pl.'s Mot. 11; Pl.'s Rev. Ex. 43.  They

are priced by the piece and by the "168 piece deal in counter display" at $75.60.  Pl.'s Rev.

Ex. 43.

The multiplying viewers appear in the catalog as short, cylindrical tubes, *id*., and are

described by plaintiff as "small telescope-type articles," Pl.'s Reply 27.  They bear assorted

images such as skeletons, witches, and mummies on the outside of the viewing tube.  *Id*.  The

catalog price is $0.30 each.  Pl.'s Rev. Ex. 43.

The next item, the "puzzle watches," also have a catalog price of $0.30 each.  *Id*.

Plaintiff describes these goods as "small, give-away, plastic wrist watches" that have

"puzzle-designed faces containing Halloween themes and images, *e.g.*, witches, ghosts, and

jack-o'-lanterns."  Pl.'s Reply 27.

The "squirt balls" are roughly spherical in shape and come in three designs resembling a

blue monster, black cat, and bloody eyeball.  Pl.'s Rev. Ex. 43.  According to plaintiff, the squirt

balls, when filled with water and squeezed, squirt water out of the pinhole opening.  Pl.'s

Reply 27.  The catalog price for the squirt balls is $0.75 each.  Pl.'s Rev. Ex. 43.

Next, the "paint palette" is a black, winged-bat shaped plastic board holding five

containers of dry paint in the colors of yellow, brown, orange, blue, and purple.  *Id*.  The paint

palette comes with a small paint brush. *Id*. The catalog price is $0.50 each. *Id*. According to

plaintiff's uncontested submission, the paint palettes feature watercolor paint. Pl.'s Reply 27.

Finally, the "stencil sets" are plastic stencils in the outer shape of a jack-o'-lantern (in

orange) and a cat (in black). Pl.'s Rev. Ex. 43. The catalog price for the stencil set is $0.50. *Id*.

Each stencil has multiple openings that can be used to trace shapes of objects associated with

Halloween, such as bats, cats, and flying witches. Pl.'s Reply 27-28.

### a. Tariff Classifications Claimed by the Parties

Upon liquidation, Customs classified the multiplying viewers, stencil sets, and puzzle

watches in subheading 9503.90.60, HTSUS ("Other toys . . . : Other: Other toys (except models),

not having a spring mechanism"), subject to duty at 6.8% *ad val*. *Id*. at 27; Entry Docs. for Entry

No. 1314530-2. Customs classified the squirt balls in subheading 9505.90.20, HTSUS

("Festive . . . or other entertainment articles, including . . . practical joke articles . . . : Other:

Magic tricks and practical joke articles . . ."), subject to duty at 5.8% *ad val*. Pl.'s Reply 27;

Entry Docs. for Entry No. 1314530-2. Customs classified the paint palettes in subheading

3213.10.00, HTSUS ("Artists', students' or signboard painters' colors, . . . amusement colors and

the like, in tablets . . . or in similar forms or packings: Colors in sets"), subject to duty at 6.5% *ad*

*val*. Pl.'s Reply 27; Entry Docs. for Entry No. 1314530-2. Defendant supports these

classifications. Def.'s Reply 7-8.

Plaintiff contends that all of the items are properly classified in subheading 9505.90.60,

HTSUS ("Festive, carnival or other entertainment articles, including magic tricks and practical

joke articles . . . : Other: Other), subject to duty at 3.1% *ad val*. Am. Compl. ¶ 21.

### b. Classification as Individual Articles

The threshold issue is whether the Trick 'n Treat Fun Center is to be classified as a single

collection or as individual articles. As the court discusses below, one article in the Fun Center,

the paint palette, if classified separately, would be classified under heading 3213, HTSUS

("Artists', students' or signboard painters' colors, . . . amusement colors and the like, in

tablets . . . or in similar forms or packings") and not under heading 9503, HTSUS.  *See* EN 95.03

(instructing that HS heading 95.03 excludes "[p]aints put up for children's use (**heading 32.13**)).

Another group in the collection (the Squirt Balls) is classified under heading 9505, HTSUS.

Goods classifiable under different headings are classified in a single heading according to

essential character, by operation of GRI 3(b), HTSUS if they are "put up in sets for retail sale."

To constitute a set put up for retail sale, the goods must be packaged together for retail sale and

also must be put up together to meet a particular need or carry out a specific activity.

*See* EN X(b) to General Interpretive Rule ("GIR") 3(b).  Here, the court cannot conclude that the

Fun Center is packaged exclusively for *retail* sale, as the Fun Center is described in a Russ

Berrie & Co. catalog as a "168 piece deal in counter display" with individually priced items.  *See*

Pl.'s Rev. Ex. 43.  Even were it assumed that it is a retail package, the collection still would not

qualify as being "put up in sets for retail sale" because the individual items have separate uses

and in that respect cannot be said to be packaged together to meet a particular need or carry out a

specific activity for purposes of GRI 3(b), HTSUS.  From the examples given in Explanatory

Note X to GIR 3(b), the individual *articles* must meet a particular need or carry out a specific

activity; it is therefore insufficient for purposes of GRI 3(b), HTSUS that they are suitable for

handing out as Halloween gifts.  EN X to GIR 3(b) gives as an example of a collection that is

"put up in sets for retail sale" goods comprising the components of a spaghetti meal (uncooked

spaghetti, grated cheese, and sauce) and gives as an example of a collection that does *not* qualify

as a set put up for retail sale a retail package consisting of different, unrelated food or beverage

items packaged together.  In summary, the individual items of the Trick 'n Treat Fun Center are

designed for separate uses and therefore are not packaged together to meet a particular need or

carry out a specific activity for purposes of GRI 3(b), HTSUS.

The next question is whether, given the general character of the collection as articles for

amusement, the Trick 'n Treat Fun Center could be classified entirely under heading 9503,

HTSUS.  EN 95.03 provides the following guidance:

> Collections of articles, the individual items of which if presented
> separately would be classified in other headings in the Nomenclature, are
> classified in this Chapter [95] when they are put up in a form clearly indicating
> their use as toys (e.g., instructional toys such as chemistry, sewing, etc., sets).

EN 95.03.  The articles in the Trick 'n Treat Fun Center do not comprise a set of related articles

that together serve an individual amusement activity, as does a chemistry or sewing set.  This is

especially the case because of the reference in the catalogue description to a "counter display,"

which connotes that the individual articles may be sold separately at retail.  Therefore, the court

proceeds, as Customs did, to classify the articles individually.[8]

### c. The Multiplying Viewers

Defendant argues that the multiplying viewers are properly classified in the subheading in

which Customs classified the goods, subheading 9503.90.60, HTSUS ("Other toys . . . : Other:

Other toys (except models), not having a spring mechanism"), subject to duty at 6.8% *ad val*.

*See* Def.'s Reply 7; Entry Docs. for Entry No. 1314530-2.  Plaintiff claims that the goods are

properly classified in subheading 9505.90.60, HTSUS ("Festive, carnival or other entertainment

articles, including magic tricks and practical joke articles . . . : Other: Other"), subject to duty at

---

[8] The parties do not mention in their submissions the tariff treatment Customs accorded
upon liquidation to the "jack-o'-lantern-designed gift basket," which appears from the catalogue
illustration to be a cardboard box container.  The court does not address this issue because the
tariff treatment of the basket is not the subject of a claim by plaintiff.

3.1% *ad val*.  Am. Compl. ¶ 21.  The court notes that there is no genuine issue of material fact

pertaining to the Multiplying Viewers.

The Multiplying Viewers have the "amusement" characteristics of toys.  Plaintiff

describes these as "depicting . . . scary Halloween scenes."  *Id*. ¶ 12(rr).  Despite this description,

the unit price of $0.30, *see* Pl.'s Rev. Ex. 43, demonstrates that any such function is limited and

more of an amusement than a utilitarian function.  EN 95.03 clarifies that the scope of the

heading includes articles that "may be capable of a limited 'use'" that is "generally

distinguishable by their size and limited capacity."

Plaintiff does not argue that the Multiplying Viewers are not *prima facie* classifiable

under heading 9503, HTSUS but contends the goods should nonetheless be classified in

heading 9505, HTSUS as festive or other entertainment articles associated with Halloween.  Pl.'s

Reply 28.  Heading 9505, HTSUS is not correct because, as the court has explained, the

"amusement" articles within the scope of the terms of heading 9505, HTSUS are the magic tricks

and practical joke articles that find classification under that heading.

As Customs concluded upon liquidation, the Multiplying Viewers are classified under

subheading 9503.90.60, HTSUS ("Other toys . . . : Other: Other toys (except models), not having

a spring mechanism"), subject to duty at 6.8% *ad val.*

<u>d. The Puzzle Watches</u>

Defendant argues that the puzzle watches are properly classified in the subheading in

which Customs classified the goods upon liquidation, subheading 9503.90.60, HTSUS ("Other

toys . . . : Other: Other toys (except models), not having a spring mechanism"), subject to duty at

6.8% *ad val.  See* Def.'s Reply 7; Entry Docs. for Entry No. 1314530-2.  Plaintiff contends that

the puzzle watches are properly classified in subheading 9505.90.60, HTSUS ("Festive, carnival

or other entertainment articles, including magic tricks and practical joke articles . . . : Other:

Other"), subject to duty at 3.1% *ad val*.  Am. Compl. ¶ 21.

Because the puzzle watches are priced in the catalog at $0.30 each, *see* Pl.'s Rev. Ex. 43,

and because neither party states that they are actual watches, the undisputed facts show that these

articles are not correctly classified as timepieces and instead have the characteristics of toy

watches.  The classification determined by Customs upon liquidation was correct.  Classification

under heading 9505, HTSUS is not correct because these goods are not "festive, carnival or other

entertainment articles" within the scope of that heading, even though the faces of the toy watches

display Halloween themes.  As the court has discussed, toys described by the terms of heading

9503, HTSUS are a class of goods distinct from the festive or other entertainment articles

classifiable under heading 9505, HTSUS.

<u>e. The Squirt Balls</u>

Customs classified the squirt balls as entered, which was in subheading 9505.90.20,

HTSUS ("Festive . . . or other entertainment articles, including . . . practical joke articles . . . :

Other: Magic tricks and practical joke articles . . ."), subject to duty at 5.8% *ad val*., Entry Docs.

for Entry No. 1314530-2, and defendant supports this classification, *see* Def.'s Reply 7.

Plaintiff contends that the squirt balls are properly classified in subheading 9505.90.60,

HTSUS ("Festive . . . or other entertainment articles, including . . . practical joke articles . . . :

Other: Other"), subject to duty at 3.1% *ad val*.  Am. Compl. ¶ 21.  The court determines that

there is no genuine issue of material fact as to these articles.

The squirt balls are "practical joke" articles described by the terms of heading 9505,

HTSUS ("Festive . . . or other entertainment articles, including . . . practical joke articles . . .").

The practical joke aspect is provided by the disguised ability to shoot a stream of water toward

an unsuspecting victim.  EN 95.05 mentions as an example of the "conjuring tricks and novelty

jokes" of heading 95.05 "water-jet button-holes," which are similar to the articles in question.

Plaintiff claims that the squirt balls should be classified in the "basket" subheading, 9505.90.60,

HTSUS, subject to duty at 3.1% *ad val*.  This subheading is not correct because it pertains only

to goods that are *not* classified in subheading 9505.90.20, HTSUS as "practical joke articles," a

subheading term that precisely describes the squirt balls.

### f. The Paint Palettes

Customs classified the paint palettes in subheading 3213.10.00, HTSUS ("Artists',

students' or signboard painters' colors, . . . amusement colors and the like, in tablets . . . or in

similar forms or packings: Colors in sets"), subject to duty at 6.5% *ad val*.  Pl.'s Reply 27; Entry

Docs. for Entry No. 1314530-2.  Defendant supports the classification of the goods in this

manner before the court.  *See* Def.'s Reply 7.

Plaintiff contends that the paint palettes should be classified in subheading 9505.90.60,

HTSUS ("Festive, carnival or other entertainment articles . . . : Other: Other"), subject to duty at

3.1% *ad val*.  Am. Compl. ¶ 21.

The term "amusement colors" of heading 3213, HTSUS specifically describes the paint

palettes.  EN 95.03 confirms the intent of the HS drafters that paint sets for children's use are

classified under heading 32.13 rather than as toys of heading 95.03.  Plaintiff's position that the

term "festive . . . or other entertainment articles" of heading 9505, HTSUS also describes this

good does not accord with the undisputed facts.  The article is an inexpensive ($0.50 each)

watercolor set of a type suitable for children and must be classified as such.  The winged-bat

shape of the palette does not by itself impart to this article the character of a Halloween

decoration or other article falling within the scope of heading 9505, HTSUS.

Plaintiff acknowledges that the paint palettes are *prima facie* classifiable under

heading 3213, HTSUS but nonetheless posits that heading 9505, HTSUS more properly

describes the goods "by application of GRI 3(a) and the Rule of Relative Specificity."  Pl.'s

Reply 28.  GRI 3(a) applies when there are two headings that both *prima facie* describe the

merchandise to be classified.  That situation is not present here.

The next issue is the selection of the correct subheading.  The paint palette is a set

featuring several colors, packaged together with a paintbrush.  The correct subheading is,

therefore, the one determined by Customs, subheading 3213.10.00, HTSUS ("Colors in sets"),

subject to duty at 6.5% *ad val.* on the entire set.

### g. The Stencil Sets

Defendant argues that the stencil sets are properly classified in the subheading in which

Customs classified the goods, subheading 9503.90.60, HTSUS ("Other toys . . . : Other: Other

toys (except models), not having a spring mechanism"), subject to duty at 6.8% *ad val*.  *See*

Def.'s Reply 7; Entry Docs. for Entry No. 1314530-2.  Plaintiff contends that the stencil sets, like

the other items in the Trick 'n Treat Fun Center, are properly classified in subheading

9505.90.60, HTSUS ("Festive, carnival or other entertainment articles, including magic tricks

and practical joke articles . . . : Other: Other"), subject to duty at 3.1% *ad val*.  Am. Compl. ¶ 21.

The court can eliminate heading 9505, HTSUS from consideration because the stencil

sets are not Halloween decorations or other articles falling within the scope of that heading.

Heading 9017, HTSUS deserves consideration due to the inclusion therein of the term

"[d]rawing, marking-out or mathematical calculating instruments (for example, drafting

machines, pantographs, protractors, drawing sets, slide rules, disc calculators)."  EN 90.17

clarifies that the heading covers "[s]tencils of a kind clearly identifiable as being specialised as

drawing instruments."  EN 90.17 (emphasis removed).  This note indicates that not all stencils

fall within the heading.  The stencils in question here have characteristics typical of toys.  They

are small and inexpensive ($0.50 each set).  Pl.'s Rev. Ex. 43.  The orange stencil is shaped as a

jack-o'-lantern and the black one is in the shape of a cat.  *Id*.  The openings for drawing are in

Halloween themes.  *Id*.  These physical characteristics indicate that the stencils are articles

designed more for the amusement of children rather than as specialized drawing instruments.

*See* EN 95.03 (explaining that toys may be capable of limited use but "are generally

distinguishable by their size and limited capacity").

        Plaintiff acknowledges that the stencil sets are *prima facie* classifiable under

heading 9503, HTSUS but argues that they are nonetheless properly classified under

heading 9505, HTSUS because of "the application of GRI 1 and principal use."  Pl.'s Reply 28.

Because the stencils are not suitable for use as decorations and do not have the characteristics of

the goods classifiable under heading 9505, HTSUS, this argument is unavailing.

        With respect to subheading, the court determines that the stencil sets are properly

classified as Customs classified them, in subheading 9503.90.60, HTSUS ("Other toys . . . :

Other: Other toys (except models), not having a spring mechanism"), subject to duty at 6.8% *ad*

*val*.

<u>6. The "Christmas Hugs"</u>

        According to the Russ Berrie & Co. catalog page submitted by plaintiff, the Christmas

Hugs are small, rounded objects depicting non-human creatures.  Pl.'s Rev. Ex. 42.  Each figure

consists of a head (with a red bulb for a nose) out of which emerge two hands with five fingers

each and two feet with three toes each.  *Id*.  The Hugs are sold in a packages that state "I'm a

Hug."  *Id*.  Hugs come with one of six messages related to Christmas.  Am. Compl. ¶ 12(w).  In

its supplemental submission, plaintiff provided a sample Hug, similar to the Christmas Hugs but

with one pair of appendages and no Christmas-related message.  Notice of Manual Filing at

Ex. 4.  It is a plastic article, two inches tall, labeled "I'm a Best Friend Hug" and has a message

printed on the packaging, "Close at heart . . . in all we do, It's so nice to have a friend like you!"

*Id.*

### a. Tariff Classifications Claimed by the Parties

Upon liquidation, Customs classified the Christmas Hugs in subheading 9503.90.60,

HTSUS ("Other toys . . . : Other: Other toys (except models), not having a spring mechanism"),

subject to duty at 6.8% *ad val*. *See* Am. Compl. ¶ 12(w); Def.'s Am. Answer ¶ 12.  Defendant

contends that classification under heading 9503, HTSUS is appropriate.  *See* Def.'s Mot. 14-16.

Plaintiff claims the Christmas Hugs should have been classified in subheading 9505.10.25,

HTSUS ("Festive . . . or other entertainment articles . . . : Articles for Christmas festivities . . . :

Christmas ornaments: Other: Other"), temporarily free of duty according to subheading

9902.95.05, HTSUS.  Am. Compl. ¶ 19.

### b. Tariff Classification of the Christmas Hugs

From the catalog illustration and the sample provided, there can be no genuine issue of

material fact as to the nature of the Christmas Hugs.  Nothing about their physical structure,

appearance, or packaging indicates that they are Christmas decorations or articles traditionally

used at Christmas.  Instead, these small plastic, cartoon-like figures have the amusing

characteristics of toys.  Accordingly, the Christmas Hugs are classified under heading 9503,

HTSUS ("Other toys . . .").  Determining the proper subheading requires the court to consider

whether the Christmas Hugs possess features that represent "animals or non-human creatures."

The undisputed evidence requires the court to conclude that the Christmas Hugs do in fact

represent "non-human creatures."  *See* Pl.'s Rev. Ex. 42.  For example, each Christmas Hug has

a head to which hands and feet, but no body, is attached.  Because the Christmas Hugs represent

"non-human creatures," the subheading determined by Customs was incorrect.  The proper

subheading for the Christmas Hugs is 9503.49.00, HTSUS ("Other toys . . . : Toys representing

animals or non-human creatures . . . : Other"), also subject to duty at 6.8% *ad val*.

7. The Candleholders

Style No. 14384, "Porcelain Embossed Mini Message Votives," are porcelain

candleholders for votive candles, in three designs: (1) a design showing figures in pilgrim attire;

(2) a design showing various food items and the phrase "Bless Our Home"; and (3) a design

bearing the phrase "Let Us Give Thanks for Family and Friends."  Pl.'s Rev. Ex. 43.  These

designs are not two-dimensional but protrude out from the cylindrical candleholder, akin to a

frieze.  *Id.*

Style No. 2462, "Christmas Votive Candles," are two-and-a-half inch tall earthenware

candleholders made to hold votive candles.  Pl.'s Rev. Ex. 42.  Each of the four candleholders

depicts a unique design: (1) an image of a teddy bear wearing a Santa Claus hat and the phrase

"Have A Magical Christmas"; (2) an image of Santa Claus and the phrase "Merry Christmas";

(3) an image of a snowman "with holly and berries in its hat, a red and white scarf, a traditional

candy cane in its hand, and with holiday gifts" at its feet and the phrase "Friends Make The

Holidays Happy"; and (4) an image of three carolers and the phrase "Dreams Come True At

Christmas."  *Id.*; Am. Compl. ¶ 12(y).

Style No. 35744 is the "Little Miracles" porcelain candleholder.  Pl.'s Rev. Ex. 42.  The

candleholder is three-and-three-quarter inches in diameter by five inches in height.  *Id.*  Plaintiff

included a sample of this article in its supplemental submission.  Notice of Manual Filing at

Ex. 5.  The article depicts three child-like angels with wings that are wearing winter hats, coats,

and boots.  *Id.*  The angels are arranged in a circle facing outwards on a circular base, at the

center of which is a metal fitting suitable for holding a taper-style candle.  *Id.*  The packaging

includes a message mentioning Christmas and the "joy of the season."  *Id.*

<u>a. Tariff Classifications Claimed by the Parties</u>

Upon liquidation, Customs classified the candleholders in subheading 9405.50.40,

HTSUS ("Lamps and lighting fittings . . . not elsewhere specified or included . . . : Non-electrical

lamps and lighting fittings: Other: Other"), subject to duty at 7.6% *ad val*., *see, e.g.*, Am. Compl.

¶ 12(x); Def.'s Am. Answer ¶ 12, which defendant contends before the court is the proper

classification, Def.'s Mot. 16-17.[9]

Plaintiff argues that the candleholders in Thanksgiving themes should be classified in

subheading 9505.90.60, HTSUS ("Festive . . . articles . . . : Other: Other"), subject to duty at

3.1% *ad val*.  Am. Compl. ¶ 21.  Plaintiff claims that certain candleholders with Christmas

themes should be classified in subheading 9505.10.25, HTSUS ("Festive . . . articles . . . :

Articles for Christmas festivities . . . : Christmas ornaments: Other: Other"), temporarily free of

duty pursuant to subheading 9902.95.05, HTSUS.  *See id*. ¶ 19 (stating that articles including the

porcelain "Little Miracles" should be classified in subheading 9505.10.25, HTSUS).  Plaintiff

claims that other candleholders with Christmas themes should be classified in subheading

9505.10.50, HTSUS ("Festive . . . articles . . . : Articles for Christmas festivities . . . : Other:

Other"), subject to duty at 5.8% *ad val*.  *Id*. ¶ 20 (stating that articles including the "Christmas

Votive Candles" (Style No. 2462) should be classified in subheading 9505.10.50, HTSUS).

---

[9] Plaintiff's amended complaint states that certain porcelain candleholders were classified by Customs on liquidation in heading 9503, HTSUS ("Other toys . . ."). *See* Am. Compl. ¶ 12(ww).

### b. Tariff Classification of the Candleholders

The court considers the two headings the parties identify, headings 9405 and 9505, HTSUS, having identified no other competing headings.  As required by GRI 1, the court considers the terms of these headings and any relative section and chapter notes.

Dictionary definitions of the term "lamps" indicate that the term can be used to describe candleholders.  *See, e.g.*, 8 The Oxford English Dictionary 609-10 (2d ed. 1989) (defining lamp as "[a] vessel containing oil, which is burnt at a wick, for the purpose of illumination.  Now also a vessel of glass or some similar material, enclosing the source of illumination, whether a candle, oil, gas-jet, or incandescent wire"); *see also* EN 94.05(I) ("Lamps . . . of this group can be constituted of any material . . . and use any source of light . . . [and] covers in particular: . . . **Candelabra, candlesticks, candle brackets, e.g., for pianos.**) (emphasis in original).[10]

Because the terms of heading 9405, HTSUS ("Lamps . . . *not elsewhere specified or included . . .*" (emphasis added)) encompass only those lamps that do not fall within the scope of other headings of the HTSUS, the court must consider whether the candleholders in question also fall within the scope of a term of heading 9505, HTSUS, which is "[f]estive . . . or other entertainment articles."  Because of this limitation on the scope of heading 9405, HTSUS, only one of the two headings, 9405 or 9505, HTSUS, can be correct for the candleholders in question.

Each of the candleholders has a "decorative" characteristic and display holiday-related themes (Christmas or Thanksgiving).  It is well established that the term "festive . . . or other entertainment articles" as used in heading 9505, HTSUS may include decorative items associated

---

[10] Unlike candleholders, candles are excluded from the heading.  *See* EN 94.05; Heading 3406, HTSUS ("Candles, tapers and the like").

with a particular holiday or festival, and the fact that an article also has a utilitarian function did not by itself exclude an article from the heading at the time these goods were entered.[11]

GRI 1 requires the court to consider, in addition to the terms of the headings, "any relative section or chapter notes."  GRI 1, HTSUS.  Two chapter notes of the HTSUS are particularly instructive as to the question of which of the two headings is correct for the candleholders.  Note 1(a)-(*l*) to chapter 94, HTSUS is a list of exclusions from chapter 94.  One of the exclusions, note 1(*l*), excludes from chapter 94, HTSUS, *inter alia*, "decorations (other than electric garlands) such as Chinese lanterns (heading 9505)."  A related exclusion from chapter 95, HTSUS is contained in note 1(t) to chapter 95, which excludes from that chapter "[e]lectric garlands of all kinds (heading 9405)."

Read together, the two exclusions instruct that some "lamps" that are also "decorations" fall within the scope of heading 9405, HTSUS while others fall within the scope of heading 9505, HTSUS.  "Electric garlands" is a term the court did not find in common dictionaries, but the intended meaning of the term as used in the two related chapter notes is revealed by the Explanatory Note to heading 94.05, which provides as guidance that heading 94.05 "covers in particular . . . electric garlands (including those fitted with fancy lamps for carnival or entertainment purposes or for decorating Christmas trees)."  EN 94.05.  Thus, according to the chapter notes, garlands, which are decorations, and electric garlands, which typically are decorations and also are lamps, are classified in heading 9405, HTSUS and excluded from heading 9505, HTSUS.  For example, a string of decorative electric lights (suitable, for example,

---

[11] The HTSUS was amended to provide that heading 9505, HTSUS excludes articles that contain a festive design, decoration, emblem or motif and that also have a utilitarian function (e.g., apparel).  Note 1(v) to Chapter 95, HTSUS (effective Feb. 3, 2007).  Because the candleholders were entered prior to the effective date of the amendment, the amendment does not govern classification in this case.

as Christmas or Halloween decorations) would be classified under heading 94.05 and not under

heading 95.05, despite the decorative "holiday" or "festive" characteristic.

The court finds it significant that note 1(*l*) to chapter 94 does not exclude from chapter 94

*all* lamps that are decorations but instead excludes "decorations . . . *such as* Chinese lanterns

(heading 9505)."  The court, therefore, must discern the class of illuminating decorations of

which Chinese lanterns are an example.  Neither the HTSUS nor the Explanatory Notes define

the term "Chinese lantern," but dictionary definitions are instructive.  *See* Webster's Third New

International Dictionary 390 (1986) (defining a "Chinese lantern" as "a collapsible lantern of

thin colored paper mostly for ceremonial or decorative use"); 3 The Oxford English

Dictionary 128 (2d ed. 1989) (defining a "Chinese-lantern" as "a collapsable lantern of thin

coloured paper, chiefly used in illuminations").  Under these definitions, a Chinese lantern must

be considered to fall within the common meaning of the term "lamp."

The question presented, then, is which holiday-themed or festive illuminating decorations

fall within heading 9405, HTSUS and which fall within heading 9505, HTSUS; as the court has

noted, an article cannot fall within both.  While clearly lamps, it is less clear that the

candleholders at issue fall within the intended meaning of the term "festive . . . or other

entertainment articles," a term that has engendered considerable tariff litigation.  Plaintiff relies

on several appellate decisions in support of its classification position that they do, *see* Pl.'s

Mot. 26-29, but none of these decisions is controlling on the narrow question presented, which

involves only decorative, holiday-themed porcelain or earthenware candleholders.  In addition to

the indications the court gleans from note 1(*l*) to chapter 94 and note 1(t) to chapter 95, EN 95.05

provides helpful guidance in stating that heading 95.05 "covers . . . **Festive, carnival or other**

**entertainment articles,** which in view of their intended use are generally made of non-durable

material."  EN 95.05(A).  Within the limitation that they are generally made of non-durable

material, the EN lists various examples of decorations that fall within heading 95.05, some of

which are lamps:

> Decorations such as festoons, garlands, *Chinese lanterns*, etc., as well as various
> decorative articles made of paper, metal foil, glass fibre, etc., for Christmas trees
> (e.g., tinsel, stars, icicles), artificial snow, coloured balls, bells, *lanterns*, etc.
> Cake and other decorations (e.g., animals, flags) which are traditionally associated
> with a particular festival are also classified here.

EN 95.05(A)(1) (emphasis added).  Chinese lanterns serve as examples of non-durable

illuminating decorations, being typically constructed of paper.  Other examples of articles falling

within heading 95.05, as provided by EN 95.05, and also within the limitation that they are

generally made of non-durable material, are "[a]rticles traditionally used at Christmas festivities,

e.g., artificial Christmas trees (these are sometimes of the folding type), nativity scenes,

Christmas crackers, Christmas stockings, imitation yule logs."  EN 95.05(A)(2).

The court notes, further, that candleholders are expressly identified in EN 94.05 as a class

or kind of goods within the scope of heading 94.05.  In comparison, EN 95.05 does not make

specific mention of candleholders even though specifically identifying (as do the relevant

HTSUS chapter notes) a class of non-durable decorative lamps, i.e., Chinese lanterns, as falling

within the scope of heading 95.05.

Note 1(*l*) to chapter 9405, HTSUS and note 1(t) to chapter 9505, HTSUS when read

together and also interpreted consistently with the guidance provided in the Explanatory Notes,

indicate a general principle under which certain illuminating decorations associated with festive

or holiday occasions fall within heading 9505, HTSUS, but these, as a general matter, are

constructed of non-durable material.  In summary, the different treatment accorded to electric

garlands and to Chinese lanterns by the relevant chapter notes, the placement of "decorations . . .

such as Chinese lanterns," but not *all* illuminating decorations (whether or not holiday–or

festival–themed) within heading 9505, HTSUS, the mention of candleholders in EN 94.05 and

the absence of a similar mention in EN 95.05, and the clarification in EN 95.05 that identifies the

criterion of durability of construction as relevant to classification, are consistent in indicating an

intended division between the two headings when applied to the particular situation posed by

festive or holiday-themed decorations with an illuminating function.  In summary, the HTSUS

embodies a general principle that goods that are holiday-themed decorations but also are lamps,

if of a non-durable construction, fall within the scope of heading 9505, HTSUS, while such

decorations of more durable construction (such as the candleholders at issue in this case)

generally do not and remain classified under heading 9405, HTSUS.[12]

     There can be no genuine dispute that the candleholders at issue, being either porcelain or

earthenware, are made of durable material, befitting the candle-holding function for which they

are designed.  The court concludes that by operation of GRI 1, HTSUS, in full consideration of

the terms of the competing headings and the relative chapter notes, the candleholders at issue are

properly classified under heading 9405, HTSUS.  The correct subheading, as defendant

maintains, is subheading 9405.50.40, HTSUS ("Lamps and lighting fittings . . . not elsewhere

---

[12] EN 95.05 provides that the festive, decorative articles of heading 95.05 *generally* are made of non-durable material.  The use of the qualifier "generally" and the examples given in the note suggest that there are exceptions (e.g., "nativity scenes") that in some instances might be rather durable yet still find classification under the heading.  But in the particular situation of lamps, Note 1(*l*) to chapter 94, HTSUS and note 1(t) to chapter 95, HTSUS indicate that the court, to reach the correct result according to GRI 1, HTSUS, *must* draw a distinction between the class or kind of non-durable, festive or holiday-themed decorative lamps, which are classified under heading 9505, HTSUS, and the class or kind consisting of more durable ones, such as Christmas tree lights and porcelain or earthenware candleholders, which are classified under heading 9405, HTSUS.

specified or included . . . : Non-electrical lamps and lighting fittings: Other: Other"), subject to

duty at 7.6% *ad val*.

### 8. The "Etched Images Plaque"

Style No. 14700 is labeled on the packaging as an "Etched Images Plaque."  Am. Compl.

¶ 12(yy); Pl.'s Rev. Ex. 44.  According to the undisputed facts submitted by the parties and an

examination of a sample plaintiff provided in its supplemental submission, the Etched Images

Plaque is a rectangular object, five-and-a-half inches tall and four inches wide.  Notice of

Manual Filing at Ex. 2.  The component forming the background for the design is a thin, clear

Lucite panel in the five-and-a-half inch by four inch outer dimensions, with beveled edges.  *Id*.

The article also features a metal rod that, when inserted from the back through a hole drilled into

the lower central portion of the Lucite panel and secured with a threaded metal cap that protrudes

from the front of the panel, serves as a stand allowing the object to be displayed nearly vertically

on a flat surface.  *Id*.  At the top of the plaque, etched from the back, are images of a white, six-

petaled flower depicting an Easter Lily and a white dove.  *Id*.  Images of a gold chalice and

another Easter Lily are etched at the bottom.  *Id*.  At the center of the plaque, in black script, is

the following message: "The Lord is risen, alleluja!  May His peace be with you always, and

may He bestow on you His promise of the Holy Spirit, strong faith, abiding hope, and enduring

love."[13]  *Id*.

### a. Tariff Classifications Claimed by the Parties

Upon liquidation, Customs classified the Etched Images Plaque in subheading

3926.40.00, HTSUS ("Other articles of plastics . . . : Statuettes and other ornamental articles"),

---

[13] The Etched Images Plaque was featured in Russ Berrie & Co.'s Easter catalog for 1993 and sold for $5.50 each.  Pl.'s Rev. Ex. 44.  This catalog also lists for sale Trolls wearing Easter Bunny costumes and candleholders with Easter Bunny motifs.  *See id*.  As discussed below, the court makes its classification determination without considering this catalog.

subject to duty at 5.3% *ad val*.  *See* Am. Compl. ¶ 12(yy); Def.'s Am. Answer ¶ 12.  Before the

court, defendant advocates classification under heading 3924, HTSUS ("Tableware, kitchenware,

other household articles and toilet articles, of plastics"), arguing that this article "is *prima facie*

classified as other household articles of plastics in Heading 3924."  Def.'s Mot. 17.  Plaintiff

argues that the plaque is properly classified in subheading 9505.90.60, HTSUS ("Festive . . . or

other entertainment articles . . . : Other: Other"), subject to duty at 3.1% *ad val*.  Am. Compl.

¶ 21; Pl.'s Reply 23-24.

### b. Tariff Classification of the Etched Images Plaque

The court eliminates from consideration heading 3924, HTSUS ("Tableware,

kitchenware, other household articles and toilet articles, of plastics") and heading 3926, HTSUS

("Other articles of plastics and articles of other materials of heading 3901 to 3914").  These

headings do not describe the entire article but only a part thereof.  As the sample shows, the

Etched Images Plaque is assembled from seven components, only one of which is plastic.  Notice

of Manual Filing at Ex. 2.  The two-piece threaded stand assembly and the gold frame, which is

of four pieces, are of metal.  *Id*.  These are not insignificant components.  The gold frame is

integral to the decorative aspect of the article, harmonizing with the gold-metallic-toned etched

image of the chalice.  The two-piece threaded metal stand, also gold-toned, allows the item to

function as a decorative article that is designed to be displayed on a horizontal surface.

Unlike the other candidate headings, which do not describe the whole article, heading

9505, HTSUS contains a term, "festive . . . articles," that describes the Etched Images Plaque in

the entirety.  The heading contains within its scope certain decorations that are associated with

particular holidays or festivals.  The sample demonstrates, beyond any genuine issue of material

fact, that the Etched Images Plaque is an Easter decoration.  The Easter Lilies, the gold chalice

(depicting the Holy Chalice of the Last Supper), and the message referencing the resurrection of

Jesus Christ are symbolic of the Easter holiday.  Classification under heading 9505, HTSUS is,

therefore, correct.  *See, e.g.*, *Midwest of Cannon Falls*, 122 F.3d at 1429 (classifying under

heading 9505, HTSUS an Easter water globe).

Defendant argues that the article "fails the criteria for 'festive article' developed by the

United States Court of Appeals for the Federal Circuit . . . in the *Midwest*, *Park*, and *Michael*

*Simon* cases because it is not so tied to a festive occasion that it would be aberrant to use the

plaque year-round."  Def.'s Mot. 4-5 (footnote omitted).  The court disagrees with this logic.

The cited cases did not involve merchandise analogous to the Etched Images Plaque and raised

different considerations.  Moreover, defendant's argument disregards the readily apparent

symbolism of the Easter Lilies and the gold chalice.  It also disregards the wording of the

inscribed message, which pertains to Easter.

In summary, heading 9505, HTSUS is the correct heading for classification of the Etched

Images Plaque by operation of GRI 1, HTSUS.  Within the heading, the correct subheading is the

one advocated by plaintiff, subheading 9505.90.60, HTSUS ("Festive . . . or other entertainment

articles . . . : Other: Other"), subject to duty at 3.1% *ad val.*

### 9. The "Baby Booties"

At issue is the tariff classification of four styles of merchandise (Style Nos. 1419, 1424,

1458, and 3050) identified as "Feet Treats Baby Booties" or "Mistle-Toes Baby Booties."  *See*

Letter from Simon Gluck & Kane LLP to Ct. at Sched. 1.  All are footwear designed to be worn

by infant children.  They are shaped like a shoe, cover the entire foot, taper around the toes, and

extend to the wearer's ankle, where the bootie is secured around the ankle by an elastic inner

strap.  *See* Pl.'s Rev. Ex. 42; Pl.'s Rev. Ex. 43.  The top of each bootie is decorated with a design

of a face that relates to the Halloween, Thanksgiving, or Christmas season.  *See* Pl.'s Rev.

Ex. 42; Pl.'s Rev. Ex. 43.

Style Nos. 1419 and 1458 depict ghosts (in white, with extended "hands"),

jack-o'-lanterns (in orange, one version with teeth, one without), or "bats" (in dark blue, with

orange "ears").  Pl.'s Rev. Ex. 43; Pl.'s Reply 22-23.  Style No. 1458 appears in Russ Berrie &

Co.'s Halloween and Thanksgiving 1992 catalog with the descriptions "'Feet Treats' Baby

Booties with no slip bottoms," "2 dozen assortment in counter display," and "4 assorted styles."

Pl.'s Rev. Ex. 43.  Both style numbers appear on the catalog page that bears the general

description "Halloween" and that has an illustration of a witch on a broomstick inside a crescent

moon.  *Id*.  Style No. 1419 ("Feet Treats") appears to be the same as Style No. 1458, except that

it is a "1 dozen assortment."  *Id*.

Style No. 1424 has a symbol of a turkey with the word "Thanksgiving" written across it

and appears in the same Russ Berrie & Co. catalog.  *See id*.  This style number also has the

description "'Feet Treats' Baby Booties" and was offered for sale as a "1 dozen assortment."  *Id.*

The catalog page lists "2 styles," "Male Turkey" (with what appears to be a pilgrim's hat) and

"Female Turkey" (with what appears to be a pilgrim's bonnet); both are principally in shades of

orange and have large protruding orange "ears."  *Id.*

Style No. 3050 appears in Russ Berrie & Co.'s Christmas 1992 catalog on a page that

contains the image of a Christmas tree.  *See* Pl.'s Rev. Ex. 42.  This style number has the

descriptions "Mistle-Toes Baby Booties with no slip bottoms," "[a] 1 dozen assortment" and

"[c]onsists of 3 styles."  *Id.*  The listed styles are "Santa – 6 pieces," "Snowman – 3 pieces," and

"Reindeer – 3 pieces."  *Id.*  The Santa style is in mostly white with red accents, the Snowman is

mostly white with gray ears and a black hat, and the Reindeer is in mostly brown with protruding

"ears" and "antlers." *Id.*

### a. Tariff Classifications Claimed by the Parties

Upon liquidation, Customs classified all of the Baby Booties in subheading 6405.20.90,

HTSUS ("Other footwear: With uppers of textile materials: Other"), subject to duty at 12.5% *ad*

*val*. *See, e.g.*, Am. Compl. ¶ 12(bb); Def.'s Am. Answer ¶ 12.  Before the court, defendant

claims that this is the proper classification.  Def.'s Mot. 17.  For the reasons discussed below, the

court concludes that plaintiff has failed to demonstrate that the government's classification is

incorrect.

Plaintiff claims that the Baby Booties displaying Christmas themes are properly classified

according to subheading 9505.10.50, HTSUS ("Festive . . . or other entertainment articles . . . :

Articles for Christmas festivities . . . : Other: Other"), subject to duty at 5.8% *ad val*.  Am.

Compl. ¶ 20.  For the remaining styles of Baby Booties, plaintiff claims classification in

subheading 9505.90.60, HTSUS ("Festive . . . or other entertainment articles . . . : Other: Other),

subject to duty at 3.1% *ad val*.  Am. Compl. ¶ 21.

### b. Tariff Classification of the Baby Booties

In response to questions by the court about the composition of the Baby Booties, plaintiff

submitted three samples of Baby Booties.  Notice of Manual Filing at Exs. 6-8.  They are not in

the same styles as the Baby Booties that were imported on the entries at issue in this case

(samples of which are no longer available), but they appear to be of the same construction as the

Baby Booties at issue, according to illustrations in plaintiff's catalogs.  The court bases its

classification decision on the catalog illustrations and the samples.

Footwear, as a general matter, is classified within section XII of the HTSUS, in

chapter 64 ("Footwear, gaiters and the like; parts of such articles").  Footwear of textile material

without applied soles are an exception to this general principle and are classified within

section XI ("Textile and textile articles").  Note 1(a) to Chapter 64, HTSUS (excluding from

chapter 64, HTSUS "[f]ootwear without applied soles, of textile material (Chapter 61 or 62)").

More specifically, headings 6111, HTSUS ("Babies' garments and clothing accessories," of

knitted or crocheted fabrics) and 6209, HTSUS ("Babies' garments and clothing accessories," of

fabrics other than knitted or crocheted fabrics) include certain types of baby booties.  The booties

of these headings are those "without an outer sole glued, sewn, or otherwise affixed or applied to

the upper."  ENs 61.11, 62.09; *see* Note 1(a) to Chapter 64, HTSUS.

The court's examination of the samples and illustrations reveals that the Baby Booties

have outer soles that are separate from the uppers and are sewn to the uppers at the bottom edge.

As shown by labels on the samples, the uppers are made of "polyester fiber" and the soles are

"100% cotton."  They are, therefore, not excluded from chapter 64, HTSUS by reason of their

construction.  Within chapter 64, the first four headings do not describe the baby booties.  *See*

HTSUS headings 6401 (certain waterproof footwear), 6402 (footwear with outer soles and

uppers of rubber or plastics), 6403 (footwear with outer soles of rubber, plastics, leather or

composition leather and uppers of leather), and 6404 (footwear with outer soles of rubber,

plastics, leather or composition leather and textile uppers).  The Baby Booties are described by

the terms of heading 6405, HTSUS ("Other footwear").  Within the heading, subheading

6405.20.90, HTSUS applies to "[o]ther footwear: [w]ith uppers of textile materials: [o]ther,"

subject to duty at 12.5% *ad val.*  This is the classification determined by Customs upon

liquidation.

Plaintiff submits that the Baby Booties are excluded from classification in heading 6405,

HTSUS, arguing that *Michael Simon Design* "rejected" the "argument that 'normal articles of

apparel' were excluded from classification under Heading 9505, HTSUS." Pl.'s Mot. 27

(citation omitted). This argument is unpersuasive because the Baby Booties are footwear, not

apparel. As the court has pointed out, these goods, having outer soles that are separate from the

uppers, are classified in section XII, HTSUS ("Footwear, gaiters and the like; parts of such

articles"), not in section XI, HTSUS ("Textile and textile articles"). Because *Michael Simon*

*Design* did not involve the tariff classification of footwear bur rather involved apparel,

specifically, certain sweaters with Christmas or Halloween motifs, the case does not establish a

precedent controlling on the tariff classification issue presented by the Baby Booties. It is also

dissimilar to this case with respect to certain of its reasoning. In significant part, the Court of

Appeals based its conclusion that the sweaters with holiday or similar themes were to be

classified under heading 9505, HTSUS rather than within chapter 61, HTSUS on the effect of

note 1(t) to section XI, HTSUS (providing that section XI (which includes the apparel chapters,

chapters 61 and 62, HTSUS) "does not cover: . . . [a]rticles of chapter 95 (for example, toys,

games, sports requisites and nets)"). *See Michael Simon Design*, 501 F.3d at 1306 ("The notes to

Section XI of the HTSUS, in which chapters 61 and 62 fall, expressly state that the section does

not cover articles of chapter 95. Thus, the tariff scheme contemplates articles falling into both

apparel and festive article categories, and it expressly resolves this conflict in favor of

classification in chapter 95." (citation omitted)). The HTSUS does not contain a provision for

chapter 64 ("Footwear, gaiters and the like . . ."), which is in section XII, that is analogous to

note 1(t) to section XI.[14]

---

[14] After the goods at issue were entered, the Explanatory Notes were amended to explain
that heading 95.05 "excludes articles that contain a festive design, decoration, emblem or motif
and have a utilitarian function, e.g., . . . apparel." EN 95.05. As the court noted earlier, note 1(v)
to chapter 95, HTSUS (effective Feb. 3, 2007), which effectuated in U.S. law the change in the
(continued . . .)

Plaintiff also argues that the Baby Booties are excluded from classification under heading 6405, HTSUS by note 1(e) to chapter 64, HTSUS.  Pl.'s Reply 22-23.  That note states that chapter 64, HTSUS "does not cover: . . . [t]oy footwear or skating boots with ice or roller skates attached."  Note 1(e) to Chapter 64, HTSUS.  Plaintiff argues that the Baby Booties are "toy footwear" on the premise that they "qualify under the recognized definition of 'toys'" because they "provide the same degree of 'entertainment, amusement or merriment' to enhance 'the state of merriment at the yuletide [or other festive] holiday season' as recognized by the courts as indicative of festive articles."  Pl.'s Reply 23 (quoting *Midwest of Cannon Falls*, 122 F.3d at 1427.  This argument fails to confront the uncontested fact that the Baby Booties are designed as real footwear for infants, not playthings for children or adults. While some footwear (specifically, sportswear) is identified by note 1(e) as falling within chapter 95, HTSUS (the chapter plaintiff submits is correct), the note, notably, does not provide for classification of footwear within heading 9505, HTSUS.  *See* Note 1(e) to Chapter 64, HTSUS (excluding from chapter 64 "[t]oy footwear or skating boots with ice or roller skates attached; shin-guards or similar protective sportswear (chapter 95)").[15]

---

(. . . continued)
international HS nomenclature, excludes from classification in heading 9505, HTSUS certain articles having utilitarian functions.  Because the baby booties at issue were entered prior to the addition of note 1(v), the amendment does not govern classification in this case.

[15] The general Explanatory Note to Chapter 64 supports the court's conclusion, providing as follows: "With certain **exceptions** (see particularly those mentioned at the end of this General Note) this Chapter covers, under headings 64.01 to 64.05, various types of footwear (including overshoes) *irrespective of their shape and size, the particular use for which they are designed,* their method of manufacture or the materials of which they are made."  EN to Chapter 64 (emphasis in italics added).

Nor can the court find an intent on the part of the HS drafters that within chapter 95, HS heading 95.05 is sufficiently broad in scope to encompass footwear of any kind.  As the court discussed previously, the court's understanding of the meaning the HS drafters intended for the term "festive, carnival or other entertainment articles" is informed by the examples given in EN 95.05, which describe: (1) "decorations" and "decorative articles"; (2) "[a]rticles traditionally used at Christmas festivities" such as artificial Christmas trees, nativity scenes, Christmas crackers, Christmas stockings and imitation yule logs; (3) "fancy dress" i.e., costume, articles such as masks and false beards and mustaches, not including apparel articles made of textiles; (4) "[t]hrow-balls of paper or cotton-wool, paper streamers . . . cardboard trumpets" and the like; and (5) magic tricks and practical joke items.  All the examples are dissimilar to the footwear at issue.

In summary, the court concludes that the classification of the Baby Booties determined by Customs upon liquidation, subheading 6405.20.90, HTSUS ("Other footwear: With uppers of textile materials: Other"), subject to duty at 12.5% *ad val.*, was correct.

### D. Defendant's Objection to Plaintiff's Exhibits 42, 43, 44, 45 and 46

Defendant objects to plaintiff's revised exhibits 42, 43, 44, 45, and 46, which plaintiff submits are pages from Russ Berrie & Co. catalogs, arguing that evidence that would be admissible at trial has not been presented to authenticate these catalog pages, to establish that they were published or distributed, or that the articles therein were for sale or display during the period of importation.  Def.'s Reply 6.  The court interprets the real basis of defendant's objection to be that the catalog pages would not be admissible for the purpose of showing that merchandise shown therein was associated with, or sold during, certain holidays or festive occasions.  In response to defendant's argument, plaintiff submitted two affidavits from former

Russ Berrie & Co. employees, endeavoring to authenticate the catalog pages.  *See* Pl.'s Reply 7-8

and accompanying affidavits.  Defendant responds that these affidavits violate USCIT Rule 26

because neither employee "was identified during the discovery phase of this action as persons

with information upon which Russ Berrie would rely."  Def.'s Reply 4-5.  Defendant also

opposed a third affidavit from the former head of the plaintiff company, Mr. Russ Berrie himself,

because of the affiant's death "over seven years before the complaint in this action was filed,"

which prevented defendant from cross-examining the affiant in this action.  Def.'s Mot. 2 n.3.

 As to an evidentiary objection grounded in the timing of holidays or festive events, and as

to all merchandise except for the Etched Images Plaque, the court considers defendant's

objection to the five revised exhibits to be moot because the court concludes that the articles at

issue are not classifiable as festive or other entertainment articles of heading 9505, HTSUS, for

the reasons discussed previously.  This is the case regardless of whether these goods can be

shown to have been advertised in a seasonal or holiday catalog or imported or sold during certain

times of the year.  The court concludes that defendant's evidentiary objection must be overruled

to the extent that it might be construed to object to introduction of the pages for a purpose *other*

*than* to show a relationship to a holiday or festive occasion.  The court concludes that, in the

situation in which samples are no longer available, the catalog pages could be shown to be

admissible to demonstrate the appearance of these items.  Because the catalog pages are the *only*

evidence that could be introduced for this purpose, the court disagrees with defendant that these

pages necessarily would be required to be excluded at trial as inadmissible.  The situation the

court describes, i.e., where no samples are available and it is necessary to view the appearance of

the articles, occurred with respect to certain articles on revised exhibit 42 (Christmas Hugs and

certain Baby Booties) and revised exhibit 43 (Haunting Horrors, Bobbling Bones, Goonie Goblin

Finger Puppets, the Trick 'n Treat Fun Center, and other Baby Booties).  As to all of these items,

the catalog pages are part of the basis for the court's conclusions as to classification, in particular

the conclusion that none of these goods falls within the meaning of the term "festive . . . or other

entertainment articles" as used in heading 9505 (although the Trick 'n Treat Fun Center

contained Squirt Balls that the court ruled to be classified under a different term of that heading,

a classification to which defendant agrees).  Despite its objection to the exhibits, defendant

nevertheless has moved for summary judgment on the articles at issue, even though, in the

absence of samples, the catalog pages are the only evidence of the appearance of the

merchandise.

In summary, defendant's evidentiary objections are directed to catalog pages that

associate merchandise with particular holidays or festive events, and defendant makes these

objections in support of its position that the articles at issue are not properly classified as

"festive . . . or other entertainment articles" under heading 9505, HTSUS.  The court has rejected

plaintiff's argument that any of the merchandise depicted in the catalogs (with the exception of

the Etched Images Plaque, above) fall within the meaning of that heading term.  The court

concludes that there is no genuine issue of material fact as to any of these articles, and

defendant's arguments as to the proper classification, as a general matter, have prevailed in this

action as to each of them.[16]  The Etched Images Plaque appeared in an Easter catalog of Russ

---

[16] The government's classification has prevailed as to all articles except for one of the
Trolls (the Soft Body Troll in Candy Cane Print Pajamas), the Goonie Goblins, the Bobbling
Bones, the Christmas Hugs, and the Etched Images Plaque.  As to the articles other than the
Etched Images Plaque, the court agreed with defendant that heading 9503, HTSUS ("Other
toys . . .") is correct but determined a different subheading.  The court's disagreement with the
classifications determined by Customs affected the rate of duty only as to the Etched Images
Plaque and the Soft Body Troll in Candy Cane Print Pajamas (which was temporarily free of
duty according to subheading 9902.95.02, HTSUS).

Berrie & Co., to which defendant's evidentiary objection applies.  No catalog page is required for the court to reach the classification determination for that article, for which the sample itself is more than sufficient to demonstrate that the article is decorative and symbolic of Easter.  In light of the sample, there is no genuine issue of material fact as to what that merchandise is.

### E. Preparations for Entry of Judgment to Resolve this Action

Although plaintiff has submitted a list of articles identified as the subject of stipulation, no stipulation on behalf of both parties has been submitted.[17]  *See* Pl.'s Mot. 29 (listing articles to which the parties agree to settle and citing Pl.'s Ex. 48); Def.'s Mot. 2 (stating that the parties have agreed to settle certain claims, also citing Pl.'s Ex. 48).  Therefore, the court is unable to enter a judgment that resolves this case in the entirety, and the court finds no justification for entering a partial judgment according to USCIT Rule 54(b).  Instead, the court will order the parties to submit a proposed judgment that directs the reliquidations necessary to effectuate the court's classification decisions on the articles that remained in dispute (ordering appropriate refunds with interest as provided by law), encompasses and identifies precisely the stipulations to which the parties have agreed, and specifies that plaintiff's remaining claims are abandoned.

### III. CONCLUSION AND ORDER

For the reasons discussed in the foregoing, upon consideration of all papers and proceedings had herein, and upon due deliberation, it is hereby

**ORDERED** that Plaintiff's Motion for Summary Judgment (Sept. 15, 2014), ECF No. 118 be, and hereby is, granted in part and denied in part; it is further

---

[17] Plaintiff's Exhibit 48 is insufficient as a basis for the court to enter judgment on the stipulated articles.  While the parties inform the court that a settlement has been reached for items identified in the exhibit, *see* Pl.'s Mot. 29; Def.'s Mot. 2, Exhibit 48 specifies an entry and invoice for each item.  The submissions of the parties suggest but do not confirm that the parties contemplate that the settlement will affect the classification of the identified articles regardless of the entries subject to this action in which the articles appear.

**ORDERED** that Defendant's Cross-Motion for Summary Judgment (Oct. 20, 2014), ECF No. 122 be, and hereby is, granted in part and denied in part; it is further

**DETERMINED** that the Soft Body Trolls in Candy Cane Print Pajamas are classified in subheading 9503.41.10, HTSUS ("Other toys . . . : Toys representing animals or non-human creatures . . . : Stuffed toys"), temporarily free of duty according to subheading 9902.95.02, HTSUS; it is further

**DETERMINED** that the other Trolls remaining at issue in this case are classified in subheading 9503.49.00, HTSUS ("Other toys . . . : Toys representing animals or non-human creatures . . . : Other"), subject to duty at 6.8% *ad val*.; it is further

**DETERMINED** that the Goonie Goblins are classified in subheading 9503.49.00, HTSUS ("Other toys . . . : Toys representing animals or non-human creatures . . . : Other"), subject to duty at 6.8% *ad val*.; it is further

**DETERMINED** that the Haunting Horrors are classified in subheading 9503.49.00, HTSUS ("Other toys . . . : Toys representing animals or non-human creatures . . . : Other"), subject to duty at 6.8% *ad val*.; it is further

**DETERMINED** that the Bobbling Bones are classified in subheading 9503.90.70, HTSUS ("Other toys . . . : Other: Other), subject to duty at 6.8% *ad val*.; it is further

**DETERMINED** that the multiplying viewers, the puzzle watches, and the stencil sets, included in the Trick 'n Treat Fun Center, are classified in subheading 9503.90.60, HTSUS ("Other toys . . . : Other: Other toys (except models), not having a spring mechanism"), subject to duty at 6.8% *ad val*.; it is further

**DETERMINED** that the squirt balls included in the Trick 'n Treat Fun Center are classified in subheading 9505.90.20, HTSUS ("Festive . . . or other entertainment articles, including . . . practical joke articles . . . : Other: Magic tricks and practical joke articles . . ."), subject to duty at 5.8% *ad val*.; it is further

**DETERMINED** that the paint palette included in the Trick 'n Treat Fun Center is classified in subheading 3213.10.00, HTSUS ("Artists', students' or signboard painters' colors, . . . amusement colors and the like, in tablets . . . or in similar forms or packings: Colors in sets"), subject to duty at 6.5% *ad val*. on the entire set; it is further

**DETERMINED** that the Christmas Hugs are classified in subheading 9503.49.00, HTSUS ("Other toys . . . : Toys representing animals or non-human creatures . . . : Other"), subject to duty at 6.8% *ad val*.; it is further

**DETERMINED** that the Candleholders are classified in subheading 9405.50.40, HTSUS ("Lamps and lighting fittings . . . not elsewhere specified or included . . . : Non-electrical lamps and lighting fittings: Other: Other"), subject to duty at 7.6% *ad val*.; it is further

**DETERMINED** that the Etched Images Plaque is classified in subheading 9505.90.60, HTSUS ("Festive . . . or other entertainment articles . . . : Other: Other"), subject to duty at 3.1% *ad val.*; it is further

**DETERMINED** that the Baby Booties are classified in subheading 6405.20.90, HTSUS ("Other footwear: With uppers of textile materials: Other"), subject to duty at 12.5% *ad val.*; and it is further

**ORDERED** that the parties shall consult and file with the court, no later than 60 days from the date of this Opinion and Order, a proposed judgment in accordance with this Opinion and Order that (1) directs the reliquidations necessary to effectuate the court's classification decisions on the articles that remained in dispute and orders the appropriate refunds, with interest as provided by law; (2) encompasses the stipulations to which the parties have agreed; and (3) specifies that plaintiff's remaining claims are abandoned.

/s/ Timothy C. Stanceu
Timothy C. Stanceu, Chief Judge

Dated:   August 30, 2018
           New York, New York